I am of opinion, therefore, that the judgment was right, and should be affirmed, with costs.

(86 Hun, 618.)

### PEOPLE ex rel. LEHIGH VAL. RY. CO. v. CITY OF BUFFALO.

(Supreme Court, General Term, Fifth Department.  March 28, 1895.)

1. MUNICIPAL CORPORATIONS—REVIEW OF ASSESSMENTS—CERTIORARI.
     Buffalo City Charter, § 101, providing that the return to a writ of certiorari to review an assessment for a public improvement "shall not be conclusive," and that the court may take evidence when necessary, and cancel the assessment, if, for any reason, it is illegal, and forbidding actions to review any irregularities or errors that may be reviewed on certiorari, enlarges the scope of that writ.

2. SAME—BENEFIT TO PROPERTY.
     Where a railroad company owning lands on a stream above navigation is assessed for a public improvement making the stream navigable for a portion of the intervening distance, and the principal cause for expense in such improvement does not exist for the distance unimproved, the court will not annul the entire assessment, even though it appears that a canal on the opposite side of the property gives it all the facilities to be secured by the improvements, the judgment of the assessors that the improvements will inure to the benefit of upper riparian owners appearing reasonable to the court.

3. SAME—PARTIAL VALIDITY OF ASSESSMENTS.
     An assessment for a public improvement on an entire parcel of land, when a part of it, beyond the range of and separated from such improvement by a railroad track, is already enjoying the benefit of a similar improvement, is illegal as to that part.

Appeal from special term, Erie county.

Certiorari by the Lehigh Valley Railway Company against the city of Buffalo to review a local assessment of $9,333 on relator's premises for dredging the Buffalo river, and excavating rock therein. The assessment was declared illegal in part, and relator appeals. Affirmed.

The opinion of Mr. Justice GREEN at special term is as follows:

The city charter[1] (section 101) provides that a writ of certiorari may be granted with a view to determine the legality of assessments. Such writ shall be applied for in the form and manner, and the subsequent proceedings therefor shall comply with the provisions of the Code of Civil Procedure (section 2120 et seq.), except as in this section expressly or otherwise provided. Then it is provided that "the return shall not be conclusive." If, upon the hearing, it shall appear to the court that testimony is necessary for a proper disposition of the matter, the court may take evidence. "If it is established that the assessment is illegal for any reason," the court may order it canceled. The court is empowered to take evidence for the purpose of determining whether the assessment is legal or illegal "for any reason," and is not concluded by the return made by the assessors to the writ. A new tribunal was made, with the power to review the case upon the return and any evidence taken in support of the petition. Relator claims (1) that its lands are not and cannot be benefited by the proposed improvement in Buffalo Creek, because none of it abuts upon that portion of the creek upon

---

[1] Laws 1891, c. 105.

which the improvement is to be made; (2) that the amount of the expense has not been assessed upon the various parcels of land to be benefited by the improvement in proportion to such benefit; (3) that the assessment upon relator's lands is excessive and unjust. But the petition contains no statement of fact in support of the last two allegations.

Two principal matters are involved in this controversy; one respecting the exercise of the power of the assessors in determining what lands were benefited, and to what extent each parcel is benefited, and in making the assessment in proportion to such benefit; and the other respecting the extent or jurisdiction of the court in reviewing the determination of the assessors upon those questions.

The board of assessors is directed to assess the whole amount ordered to be assessed upon the parcels of land they deem benefited by the improvement, and in proportion to such benefit. A very wide discretion has been conferred upon the assessors in this respect, but still it is not unlimited. They have no arbitrary power to determine that certain property is benefited when it is perfectly evident that it is not and cannot be. "Certainly," says the court, "the language used is very broad, but it seems only reasonable that some fact should exist upon which their judgment can be based." Longley v. City of Hudson, 4 Thomp. & C. 353. Whether certain property may properly be included in the assessment for benefits depends upon the principle upon which it is made as applied to the particular facts, such as the nature and extent of the improvement, and the location of the lands assessed with respect to it. The probability of benefit or advantage that may be derived from it and various other circumstances are to be taken into account. The question is, however, one of general benefit to the locality arising from the enhancement in value of the property, and not merely immediate local use or enjoyment of the improvement after it is made. The general rule for determining these benefits is to ascertain the market value of the property with and without the improvements,—what is the property now fairly worth in the market, and what will be its value after the improvements are made? People v. Mayor, etc., of City of Syracuse, 2 Hun, 433. The effect of the improvement upon the market value is to be considered, and the assessment made in view of that fact, without regard to the present use of the lands or the purpose of the owner in relation to their future enjoyment. Id., 63 N. Y. 299. And, in ascertaining what the relative benefit is to different parcels of land, the situation of the different lots, and their relative adaptation to uses which would be promoted by the improvement, may properly be considered. Whether access to them is needed, and to what extent the beneficial enjoyment would be increased by the improvement, should be considered. Id. 300. But the benefit and advantage which the property owners will derive from the improvement ought not to be speculative, conjectural, or distant, depending upon remote and uncertain contingencies, but· they should be substantial, certain, and capable of being realized within a reasonable and convenient time. In re Fourth Ave., 3 Wend. 452; People v. Mayor, etc., of City of Syracuse, 63 N. Y. 300.

The true and exact apportionment of the expenses can never be determined by any fixed rule, like the assessment of unliquidated damages by a jury; the sums to be contributed by each owner rest in the judicial discretion of the assessors. What would seem just to one set of men might seem quite unjust to another, and the most that can be attained or hoped for is an approximation to what is just. Were the courts to interfere and vacate these verdicts, for no other reason than the difference of opinion between the judges and assessors in regard to the quantity of expense chargeable upon a particular piece of land, few assessments would be able to stand. From the very nature of the duty assigned to the assessors, their powers over the sums of money which each particular piece of property chargeable shall contribute must be nearly absolute, and their assessment roll final and conclusive, unless it is such as shall shock the common sense, and furnish intrinsic evidence of fraud or other misconduct. Lyon v. City of Brooklyn, 28 Barb. 609. "Whether the assessment is just or not is not a question for us. It is whether it is lawful,—whether the property was lawfully liable to assessment. In my opinion, that assessment should have been only nominal.

Those whose province it was to decide the question thought otherwise. If an error has been committed in the amount of the assessment, we cannot correct it." Owners of Ground v. Mayor, etc., of Albany, 15 Wend. 377.

In People v. Lohnas, 54 Hun, 608, 8 N. Y. Supp. 104, relator's property was near, but not on, the street widened, and it was claimed that it was not benefited. "That was a question for the trustees to determine. The return affirms that their property was benefited."

In People v. Gilon, 126 N. Y. 147, 27 N. E. 282, the point decided was that the railroad tracks, ties, and rails were not assessable, and the assessors' return stated that the company was not benefited by the improvement, and the record contained no evidence to show that it was. But the judge writing the opinion of the court went further than the question before the court warranted, and observed that the assessors were the conclusive judges of the property supposed to be benefited, and the extent of such benefit, and their determination cannot be reviewed upon certiorari except for errors of law. Code, § 2140. "They had the power to assess upon their own knowl-. edge and judgment, after an inspection of the property; and, in the nature of things, that knowledge and the grounds of their determination could not be reproduced before an appellate tribunal in such a manner as to enable a review thereof to be had;" citing In re Cruger, 84 N. Y. 619.

In Re Church St., 49 Barb. 456, it was complained that the area of assessments for benefits was too great, and wholly outside of the range within which there was any improvement or enhanced value of the lands. The court said that a wide discretion had been conferred upon the commissioners in this respect. "They are authorized to extend their assessments to any lands they deem benefited. The statute takes this subject out of any review by the courts. The commissioners appear to be vested with sole discretion in this respect. The question is practically one of fact, and not of law, and I do not perceive that the legislature could have expected that the courts would be better able to decide upon the propriety of the extent of territory to be included in the assessments for benefit than the commissioners. The city parks and markets were assessed over $500,000, and the court observed that it would not undertake to say that the price of the park had been enhanced by the extension of Church street; but its future value for building or commercial purposes, should such changes be made, would be improved as much as the land on the opposite side of Broadway, or other contiguous property."

In Re Cruger, 84 N. Y. 619, the petitioner claimed that the assessors wrongly apportioned the assessment, since they made no difference between lots where the grade was raised but a few inches and those where it was raised 18 feet. The assessors adopted the frontage rule, and that they are at liberty to do. See O'Reilley v. City of Kingston, 114 N. Y. 448, 21 N. E. 1004; Kinney v. City of Troy, 38 Hun, 289.

The statute authorized the court to vacate assessments for "substantial error in the proceedings." We quote from the opinion of the court: "The objection to the principle upon which the assessors acted in making their assessments for benefit is equally unavailing. In re Eager, 46 N. Y. 109. The conclusion reached by them was a matter of judgment on their part. Elements went to the formation of their conclusions which cannot be placed before us. We cannot say their determination was erroneous, even if it was exposed fully to our review. To criticise the results of their judgment would practically require that we should ourselves try every question of value and of benefit, and that, too, upon evidence different from that before the assessors. Their error of judgment, if in fact it existed, was not an error in the proceedings, and not the subject of our review under the statute. A similar answer disposes of the objection that the area of the assessment for benefit was too small. The law committed that question to the assessors and the board of revision. They acted upon such knowledge and observation as they had, and such proof as was presented. They had a discretion to exercise in this respect which we cannot review. The petitioner is, in substance, asking us to substitute the opinion and judgment of his witnesses as to the area of benefit for that of the officers to whom it was committed by the statute." But in this case it was stated that the petitioner's property was benefited. It was claimed that the amount of the assessment was too large.

In Genet v. City of Brooklyn, 99 N. Y. 308, 1 N. E. 777, the court said that,

assuming the charge exceeded the benefit, it was, nevertheless, made under the authority and direction of the legislature, and it cannot be invalidated by proof that the charge was unjust or unequal or even arbitrary, and that the judgment of the commissioners in fixing the district was final unless it was subject to revision in a direct proceeding, as to which it was not necessary to determine.

In Le Roy v. Mayor, etc., 20 Johns. 430, the court said: "Who are to be comprehended in an assessment depends on the principle by which it is made. That must be determined by a sound construction of the law applied from the facts. It does not rest in the discretion of those who are to execute the law. The superintending power of this court is competent to establish the principle and compel the inferior authority to be governed by it; leaving to its discretion the manner of reviewing, and the amount of contribution to be exacted from each individual." From various orders, maps, and other instrumental proceedings returned, the court was able to say that the class of persons actually benefited had been omitted. That equality had therefore been violated which the court thought the statute or its true construction demanded, and they therefore set aside the proceedings in that case.

In Ex parte Mayor, etc., of Albany, 23 Wend. 283, it was said that the former case is an authority for no more than that the court will take up the admissions in the return that a greater number have been benefited than the inferior tribunal had assessed.

And the case of Baldwin v. Calkins, 10 Wend. 166, so far as it affirms that the principle of an assessment may be reviewed by certiorari, was questioned in Re Mt. Morris Square, 2 Hill, 28, where the court observed that "the objections which go to the merits are susceptible of another and conclusive answer. They respect their improper omissions of land from the assessment, or the injurious extension of the assessment to persons who, it is said, cannot be benefited. This involves an inquiry into the evidence which cannot be insisted by the common-law certiorari."

"Upon a common-law certiorari, the court cannot review the determination of the commissioners that the relator's lands have been benefited or in respect to the sums assessed. These are matters of fact, and belong to the commissioners exclusively to determine, and it is only where it is shown that they have acted upon some erroneous principle or violated some legal right that the court may interfere." People v. Haines, 3 Thomp. & C. 227.

The question of special benefit and the property to which it extends is, of necessity, a question of fact. Spencer v. Merchant, 100 N. Y. 588, 3 N. E. 682. "When it becomes a question of fact whether the proposed improvement will be advantageous to the property in any designated direction, the decision of the corporate authorities is conclusive. But then there must be a question,—something to decide. I mean, of course, where the district is not clearly included. If it is entirely clear that any portion of a proposed district cannot be benefited, then an attempt to render the property in it liable to part of the expenses" will be set aside by the court; as, for instance, where the land assessed was so situated, by reason of any intervening tunnel, that it could have no connection with the sewer. People v. City of Brooklyn, 23 Barb. 166. So, where some of the land assessed for a sewer was lower than the bottom of the sewer, so that it could not be drained into it without considerable expense and change in the surface of the lots, another portion could not drain into it without crossing the lands of third persons, and certain other portions were assessed at a uniform rate, without regard to their distance from the sewer or the expense of connecting with it. Clark v. Village of Dunkirk, 12 Hun, 181. This case was affirmed upon the ground that the assessors went upon a rule wrong in law, in this: That, in getting at the value of lands deemed benefited, the value of the buildings was not to be taken into account. This was considered "an error of law." 75 N. Y. 612.

Kennedy v. City of Troy, 14 Hun, 308, was an action to set aside an assessment for a sewer upon the ground that the assessors acted upon an erroneous principle, and omitted property benefited by it. The testimony of one of the assessors showed that they did not decide that the lands omitted were not benefited, but that they thought (erroneously) they could not legally assess them. But this case was reversed in 77 N. Y. 494, upon the ground

that it did not appear that the assessors acted upon a rule wrong in law. "They took, as a rule, that all property benefited by the making of the sewer must be assessed for the cost of it. If they erred at all, it was in determining what property was in fact benefited. Such an error is to be reviewed and corrected by certiorari, and not by suit,"—citing Le Roy v. Mayor, etc., 20 Johns. 430. And see Elwood v. Rochester, 43 Hun, 113.

"Suppose the assessor had assessed lots several blocks from the proposed sewer, and which could not possibly be benefited thereby, and, while assessing some, had arbitrarily omitted to assess others; would such an assessment be within the power conferred? It seems to me not, because the judgment of the commissioners would be without a single fact to uphold it. The supposed case is the one before us, so far as the sewerage constructed can possibly benefit the property of the plaintiff which is assessed. There is no access from the low land to the sewer. It cannot and does not drain the lot of the plaintiff. While this lot is assessed, another larger lot (Orphan Asylum lot), directly opposite, bears no part of the burden." And the map showed that the plaintiff's lot was in fact drained by another sewer. Longley v. City of Hudson, 4 Thomp. & C. 353.

In Re Common Council of Amsterdam, 126 N. Y. 158, 27 N. E. 272, some of the property assessed was not bounded on the extended streets, but was situated upon outlying streets, not immediately or directly connected with the streets extended, and quite far distant therefrom, a mile or more. Upon a motion to confirm the report of the commissioners, which contained the evidence taken, the special term was of opinion that this assessment would not stand as to the property which was not bounded upon the extended street, and held that there was no sufficient proof that this property was specially benefited by the improvement, and the matter was referred back to the commissioners for further hearings and assessments. The general term appears to have agreed with the special term that there was no sufficient proof of special benefits to the outlying owners; but the court of appeals held that the general term was right in its conclusions that the commissioners were not limited to the assessment upon lands bordering upon the extended streets. "The authority given is without limit or restriction. No arbitrary district of assessment is marked out. No limitation upon the commissioners' judgment is imposed, but any real estate benefited by the improvement is by that fact alone made liable to assessment. As a consequence of that construction, it follows that, while thus far no sufficient proof of benefit has been given as it respects the outlying property, yet, on a rehearing, there may be."

In Lang v. City of Buffalo (special term, July, 1891) it appeared that the plaintiff owned no property on the proposed line of a sewer on Ferry street, but their property was situated on or near the easterly line of Bailey avenue. Their property located in that vicinity was incapable of being drained into this sewer, by reason of the fact that the creek where it crossed Bailey avenue was lower than the sewer itself. But the defendant contended that the plaintiff's property may and in the future will be drained by a sewer to be laid in Bailey avenue, and connected with the Ferry street sewer at the junction of Bailey avenue. Some evidence was given directly tending to establish the probabilities to be that those lands must be afforded with sewer facilities for this drainage in this manner. The slope of ground from the city line to the junction of Ferry street and Bailey avenue is southerly, and for that reason favorable to the drainage of the property in this direction. It was also stated that the Ferry street sewer was constructed larger than it otherwise would have been, to afford drainage to plaintiff's land, and that it was sufficient for many years in the future to extend these facilities to them by means of an addition of a sub-sewer in Bailey avenue, and that this sewer can, as a matter of fact, be constructed to connect with the proposed sewer under the creek by a siphon sewer laid and maintained at that point. Judge Daniels, in his opinion, said that "the benefit, of course, is not expected to be derived by the property through its immediate connection with this sewer, but by the construction of a subsewer in Bailey avenue. It is morally certain that the plaintiff's property must ultimately find its relief by sewerage in a southerly direction, and following down the line of Bailey

avenue. The natural avenue for it, according to the slope of the ground, is from the northerly line of the property, down Bailey avenue, to and under the creek. It is not required that any specific amount or measure of benefit shall result to the property, but it must, as a matter of fact, be benefited by the improvement to some extent to afford the assessors jurisdiction to include it in the assessment; and the evidence shows the fact to be that they had before them such information, accompanied with its probable correctness, as led them to the conclusion that this property would all be benefited by this improvement, and that benefit is stated to be means which the improvement will afford for the drainage of this property by the subsewer expected to be laid in Bailey avenue. All that is essential to establish the jurisdiction of the assessors is that it should receive some benefit from the improvement, and then the amount is left to the judgment of the assessors that any substantial benefit derived by the property from the improvement will justify an assessment."

In view of the provisions of the city charter empowering this court to take evidence upon the legality of an assessment, and to vacate it if found "illegal for any reason," and forbidding an action to review any definite irregularity or error that may be reviewed or corrected on certiorari, it is evident that the scope of the writ of certiorari is also enlarged, and the decisions upon the common law writ are, to a large extent, rendered inapplicable. But the powers of the board of assessors, as determined by the numerous decisions of the courts, are in no way circumscribed, nor do we believe that the powers and jurisdiction of the courts in reviewing the determination of the assessors upon questions of fact are, to any extent, enlarged or extended beyond the scope of the prior jurisdiction. The assessors still have and possess a large discretion in fixing the area of supposed benefit, and in determining what property is benefited and the proportion of benefit inuring to each parcel of land. It is a matter of judgment or opinion, founded upon the nature or character of the proposed improvement, the location, value, and character and use of the respective properties deemed benefited, their relativity to the improvement, and a variety of other considerations and circumstances. These are essentially matters of fact, and this determination is confided by the legislature to the board of assessors. But their powers cannot be exercised in any arbitrary manner, nor is their discretion unlimited. There must be some reasonable basis for their judgment and conclusions. They cannot arbitrarily judge that certain property is benefited when it is clearly evident that it is not, and cannot be from the nature of the particular improvement, and the character and location of the property. If they commit an error, either in the principle upon which the assessment is made, or in making a clear departure or misapplication of the true principle of assessment in the particular case, the superintending power of the court is adequate and competent to establish the principle, and to compel the inferior tribunal to be governed by it. The determination of each case must be determined upon the particular circumstances presented. It is not an answer for the assessors to say that the assessment was made only upon the properties that they deemed benefited, when the evidence shows a plain, material, and substantial departure from the principle as applied to the particular facts. In such a case the matter "does not rest in the discretion of those who are to execute the law." Le Roy v. Mayor, etc., 20 Johns. 430. Of course, the court will not undertake to substitute its own judgment for that of the assessors upon mere matters of fact or opinion, but it is both its power and its duty to keep them within the scope of their authority, and to prevent any arbitrary exercise of their powers conferred by the law.

Relator claims that none of its property is benefited by the improvement, and requests this court so to determine, contrary to the judgment and determination of the assessors. It is 2,800 feet from the line of relator's land to the nearest point of the improvement. Between these points, and for 3,200 feet east from the relator's north line, the Buffalo river is unnavigable, as appears from the testimony of the engineer called by the city, and his soundings. The dredging for which the assessment is levied would in no manner improve the condition of the river between those points of 6,000

feet to enable vessels to get any nearer the relator's property than the point at which the dredging ends.    The large expense of this work is caused by the large amount of rock in the bed of the river, and its removal is of first importance before proceeding to render the river navigable further up the stream.    Beyond the point where the improvement ends at Hamburg street, and up the stream, and in front of relator's premises, there is little or no rock; and consequently, when the dredging is further extended at some reasonable and probable time, the expense will be much less.    Relator contends that in view of the facilities possessed by it for operating its property by means of a ship canal, canal slips, etc., and the large expenditure to produce that condition, it is an absurd claim that it can possibly be benefited by this improvement; that the assessors could only speculate that some time in the future, by the expenditure of other large sums of money, the river would be so improved as to enable the relator to derive some benefit from its use along its property; that the charter means certain and present benefit, and cannot be held to authorize speculation as to what might be the result in the distant future.    It is true that the supposed benefit or advantage should be substantial, reasonably certain, and capable of being realized within a fairly reasonable and convenient time, and ought not to be merely speculative, conjectural, and distant, depending upon remote and uncertain contingencies.    But, generally speaking, these are matters of opinion, judgment, or fact, and therefore questions for the determination of the assessors, with which the court will not lightly interfere.

The question for the court is whether the relator's lands abutting on the river will derive any substantial or appreciable benefit or advantage from this improvement.    If so, then it is properly assessable, even though its proportion of the assessment may be excessive.    We are unable to perceive that the relator is not or cannot be benefited by the work of making the river navigable, even though it will have no immediate use or enjoyment of its waters as a navigable stream in respect to its property.    The present use of the property for the uses or purposes to which it may be devoted after the improvement is done does not necessarily absolve it from assessability for benefits.    The assessors have adjudged that, in their opinion, the removal of this rock and earth from the bed of the river, in order to render it navigable, will inure to the benefit and advantage of upper riparian owners beyond the point where navigability will end.    Their judgment seems reasonable, and meets the approval of the court.    It has a sound basis in fact, and the matter was clearly within their jurisdiction.    No erroneous rule of assessment was adopted, nor does there exist any substantial departure from or misapplication of the true principle to the facts; and we cannot perceive, and therefore cannot adjudge, that no benefit will inure to the upper riparian owners from the fact that the river is rendered navigable below stream.    On the contrary, it is a very reasonable presumption that some substantial benefit will inure to it as propriety of lands upon the stream.    Even though the stream is made but partly navigable, its importance and its value are increased, and must benefit to some extent the owners of lands in front of which navigability does not extend or exist.    Nor would we be warranted in holding, contrary to the judgment of the assessors, that there would be no enhancement of value by reason of this improvement; that it is all a mere matter of speculation and conjecture, depending upon remote and uncertain contingencies.    If the assessors took into consideration—and we assume they did—the probability or expectation that within a reasonable time the dredging of the river would be extended beyond relator's property, the court cannot say that those elements ought not to have entered into their consideration at all, or that the assessors have acted upon a rule wrong in point of law, or made an essential departure from the correct rule of assessment.    From the nature and condition of things as they exist, there is a strong probability, amounting to a moral certainty, that the work of rendering the stream navigable will be extended so as to reach relator's land.    Relator is a railroad corporation, with large and valuable properties in the vicinity in question, and it is necessarily intimately connected with lake and canal navigation.    The land is located upon Lake Erie and the City Ship Canal.    Relator insists that it is thereby furnished

with all needed harbor and dock facilities; that it has already made extensive improvements, at great expense, for the purpose of utilizing its land for dock and harbor purposes, and connecting the same with the ship canal and Lake Erie, adequate and sufficient for all needs in the use of its property. In the course of time, however, the business of railroads and water transportation will increase, and additional facilities for ships and vessels to reach relator's property on the north will be required. Can it be maintained that, if the city should undertake to make the stream navigable up to relator's property, it will neglect to utilize its land for dock and other facilities? That it will refuse to improve its property on the north as it has on the south, and thus afford vessels the privilege of loading and discharging their cargoes on Buffalo river? The proper use for the lands lying on the river is for docks or wharves, and the excavation of this rock in the bed of this stream is but a step in advance in the direction of rendering lands available for this purpose; and that may be justly considered a substantial benefit,—an advantage to some extent; one that is reasonably certain and capable of being realized within a fairly reasonable time. And it greatly lies within the power of this railroad company to procure the accomplishment of that result, and to realize the actual use and enjoyment of its lands for the purposes they are peculiarly adapted.

We are therefore of the opinion that we will not be warranted in holding, contrary to the judgment of the assessors, that any error was committed in their determination that the excavation of rock and earth from the bed of the river, for the purpose of rendering it navigable, will inure to the benefit and advantage of a railroad company owning lands upstream, and beyond the point of navigability, notwithstanding the existence of an artificial waterway, docks, and freight houses within the southern bounds of its property, and some distance from the point of improvement. When the stream is afterwards made navigable up to its lands on the north bounds, another waterway will be opened up to Buffalo Harbor. If this improvement had been extended beyond relator's property, a proportionate share of the expense of excavating this rock would undoubtedly be chargeable to its property; so if, in the first instance, the dredging had been commenced in that portion of the stream fronting its lands, and subsequently this particular work had been undertaken.

In regard to the contention that the amount of the expenses of this work has not been assessed upon various parcels of land in due and proper proportion to the supposed benefits inuring to them respectively, and that relator's share is excessive and unjust, we will observe that, in the first place, there are no statements of fact in the petition in support of this allegation; and even if there were, and the proof established the fact, it would require a very gross case of inequality to warrant the court in adjudging that the decision of the assessors was wrong in law. We are constrained by the adjudications of the courts heretofore referred to, and reported, from making any such determination in this case. We cannot determine the quantum of benefit or particular amount that should have been assessed.

But the court is unable to perceive upon what principle or method of assessment the assessors proceeded in assessing the expense of this work upon all of the relator's large and valuable lands lying beyond the Buffalo Creek tracks, and far beyond the range and scope of the improvements in the river. The lands included in the assessment have a frontage of 5,045 feet on the Hamburg turnpike, running back to the Buffalo river and the Lake Shore & Michigan Southern Railway tracks, and bounded on the east by Tifft street; containing about 260 acres, 30 acres of which are cut off by the Buffalo Creek Railroad tracks, and are situated immediately adjacent to the Buffalo river. The City Ship Canal, a public navigable waterway, runs within the southern bounds of the property, and is connected with a cross-cut canal and several canal slips, upon which the relator has erected lumber and ore docks for the convenience and necessities of the business of transportation, both by land and water. In respect to this portion of its property, the relator possesses all necessary dock and harbor facilities; and it is alleged that it has been put to large expenditure in improving this property for this purpose, and in connecting the same with the ship canal and

Lake Erie. Taking into consideration the nature, condition, and construction of this property, its situation and locality, and the purposes to which it is now devoted, used, and enjoyed, and its connection with Buffalo Harbor by an artificial waterway, we cannot resist the conclusion that the assessors must have lost sight of the true rule of assessment, and made a clear departure from it. The supposed benefit to this portion of the property by reason of dredging in the river some distance from it is a mere supposition, without any fair and reasonable basis in the existing circumstances. It is largely speculative, conjectural, and remote. This property is reached by vessels through the ship canal, and the river bounding the whole lands upon the north and west is unnavigable, and will remain so after this dredging is completed. How, then, can it be claimed that the dock property connected with the ship canal will be benefited by such an improvement? The court will hesitate before undertaking to substitute its own judgment in the place of the assessors in respect to the area of benefits, and should abstain from doing so in a reasonably doubtful matter; but, where the evidence shows that they could not have acted upon the principle of benefits as applied to the particular circumstances and condition of things, it is within the province of the court, and it becomes its duty, to compel a reasonable observance of the rule, and to set aside any arbitrary action. All that the court here determines is that the action of the assessors in assessing all of relator's property was illegal so far as this particular improvement is involved.

An order in accordance with the above opinion will be settled after due notice of the time and place of such settlement.

Argued before DWIGHT, P. J., and LEWIS, BRADLEY, and WARD, JJ.

Frank Brundage and Herbert P. P. Bissell, for relator.
Frank Laughlin, for respondent.

PER CURIAM. Order affirmed, on opinion of GREEN, J., with $10 costs and disbursements.