(16 Misc. Rep. 258.)

PEOPLE ex rel. CONSOLIDATED TELEGRAPH & ELECTRICAL SUB-
WAY CO. v. BARKER et al.[1]

(Supreme Court, Special Term, New York County.   March, 1896.)

1. TAXATION—ASSESSMENT OF PERSONAL PROPERTY OF CORPORATION.
     On the assessment of the personal property of a corporation, the assess-
     ors, in determining the value of the realty to be deducted from the value
     of all the property of the corporation, are not concluded by the assessed
     valuation of such realty.

2. SAME—VALUATION—ELECTRICAL SUBWAY.
     The cost of constructing an electrical subway, which can be used for
     no other purpose than as such subway, is a proper basis for assessing
     its value, as its value cannot be estimated by a comparison with any
     other kind of real property.

Certiorari by the Consolidated Telegraph & Electrical Subway
Company against Edward P. Barker and others, commissioners of
taxes and assessments, and to review assessment of relator's per-
sonal property for taxation.   Dismissed.

John C. Tomlinson, for relator.

Francis M. Scott, Corp. Counsel (James M. Ward, of counsel), for
respondents.

BEEKMAN, J.   The relator is a domestic corporation, exercising
a franchise in the public streets in this city, for the carrying of
electrical conductors for hire through subways constructed in said
streets.   It was assessed by the respondents for personal taxation
for the year 1895, at the sum of $939,942; and, claiming to have been
aggrieved thereby, it has sued out a writ of certiorari, under chap-
ter 269 of the Laws of 1880, which brings up for review the action
of the respondents in that regard.

It appears upon the return to the writ that the relator was pri-
marily assessed in the sum of $3,000,000, and thereafter, while the
books were open, it submitted to the respondents a statement in
writing, and under oath, upon a form adopted and in use by the
respondents, and in compliance with the requisitions which such
form contained for detailed information in respect to the financial
condition of the relator.   Accompanying this statement was another
under oath, entitled "Supplemental Statement," giving further de-
tails; and, upon a consideration of these matters, the respondents
reduced the assessment in question to the sum of $939,942.   The only
question in controversy is in respect to the valuation of the real es-
tate of the relator.   There is nothing in either of the statements
in question purporting to give the actual value of said real estate,
nor was any such information by the respondents.   It is undisputed,
however, that such real estate, which is wholly situated within this
city, was assessed for purposes of taxation by the respondents at the
sum of $715,000.   If this should be taken as the actual value, it is
evident upon the face of the record that the relator should not have
been assessed at all in respect to its personal property; but it seems
to have been held that such assessed value is not conclusive upon the
respondents.   They may, notwithstanding such assessment, consider

[1] Reversed.   See 39 N. Y. Supp. 776.

the question as still open when they come to determine the amount which should be assessed for personal taxes, and estimate and determine the value of the real estate to be something very much larger. While consistency and good administration, to say the least, should forbid such a result, it can no longer be said that the prior assessment of value is conclusive under the decisions of the court of appeals.

The question was raised in the case of People v. Barker, 144 N. Y. 94, 39 N. E. 13. At page 100, 144 N. Y., and page 13, 39 N. E., Judge Andrews says.

"Real and personal property are to be separately assessed. In case of an individual assessed for both, if the realty be undervalued, the loss cannot be made up by adding it to the assessment of the personalty. But the law governing the taxation of corporations (Laws 1857, c. 456) requires the valuation of the whole property owned by the corporation, whether real or personal, or both, in order to ascertain the capital which is the subject of taxation (People v. Coleman, 126 N. Y. 433, 27 N. E. 818); and from the aggregate is to be deducted the assessed value of the real estate, and the balance is the capital subject to assessment, after deducting debts and any exemptions allowed by law. In assessing the capital of a corporation for the purpose of taxation, it is immaterial in which description of property the capital may be invested. Both its real and personal property are to be considered and valued, and from the aggregate value is to be deducted the assessed value of the real estate, for the obvious reason that to that extent a separate taxation is provided. * * * In case of corporations it may happen that an undervaluation in the assessment of the real estate as such will be corrected in its valuation as part of the capital, and so the undervaluation may be remedied, and the whole property be subjected to taxation at its real value. The fact, therefore, that the assessed value of the relator's real estate was $1,515,-400, does not necessarily show that it was its full value; nor did it, we think, preclude the commissioners from estimating its value for the purpose of ascertaining the capital subject to taxation at its actual value, although it exceeded the assessed value. * * * We hold that the commissioners could legally disregard the assessed value of the real estate in estimating the value of the capital, and the question of legality is the only point now in question."

In that case the real estate was also situated in this city.

Taking, this, therefore, to be the law of this case upon the question of power, it cannot be said that the action of the respondents in valuing the real estate of the relator at a larger amount than that for which it had been assessed for purposes of taxation was illegal; so that the only point remaining to be disposed of is whether there was error in the proceedings of the respondents in the exercise of the power which they possessed. It appears in the supplemental statement made by the relator that the real estate in respect of which it had been assessed consisted of their subways constructed in the public streets, and that the cost of the construction of said subways amounted to the sum of $5,423,717.94. In connection with this item, certain statements are made, to the effect that the relator was not allowed to lay these subways in such streets and places, or to such an extent, as to the company seemed best or most profitable, but that it was compelled by the board of electrical control in said city to construct the same, not only with regard to existing requirements, but also in reference to future demands, in order to prevent future disturbances of the street; that many of the sub-

ways which the relator was so directed to construct have not been occupied; that, by law, it is required to furnish space free of charge for electrical conductors used by the city; and that only between 39 and 40 per cent. of the subways so laid are now occupied. It is also averred that, upon the assessment of said subways as real estate for the purpose of taxation, the matter was the subject of discussion between the commissioners and the officers of the relator, and that the amount for which said subways were so assessed, to wit, the sum of $715,000, represents the entire and fair value of the same. It is quite plain that the respondents, although the fact is not affirmatively stated in the return, took the cost of the subways as fairly representing their value, for the amount of the assessment which they made is substantially the result which is obtained by counting the cost of the subways among the assets of the company, and deducting from the total the items which by law are to be allowed. The commissioners, therefore, had before them facts which, in connection with knowledge in regard to the subways previously acquired according to the supplemental statement, were sufficient in law upon which to base an estimate of value up to the limit of the cost of the property.

In the above-cited case, Judge Andrews, at page 103, 144 N. Y., and page 13, 39 N. E., says:

"The commissioners had a right to act upon evidence outside of that furnished by the relator. In making inquiry and collecting the facts, they are not bound by the strict rules which govern ordinary judicial proceedings. If they act in good faith upon their best judgment, upon reasonable grounds, and they do not err in the principle of assessment to the prejudice of the taxpayer, their decision cannot be overruled."

In the case of People v. Barker, 139 N. Y. 55, 34 N. E. 722, the court says (page 60, 139 N. Y., and page 722, 34 N. E.):

"The section of the statute requires the commissioners to declare their decision within a certain time. This decision, it need scarcely be said, is not to be capricious, arbitrary, or fanciful. It must be based upon some evidence or facts, and should be the result of the exercise of judgment and discrimination. This would naturally be so, and the statute in the succeeding section (821) provides for a certiorari to review or correct on the merits any decision or action of the commissioners in such matter. This does not mean that the court is to place itself in the position of an assessor, and review the decisions of those officers upon questions of value or appraisement, where the officers proceeded upon information or evidence tending to support their decision. The court generally will not look into questions of fact as to the amount or value of the personal estate of a corporation or individual. These are questions for the judgment of the assessors, and their decisions will ordinarily be sustained. This doctrine has been advanced and decided in several cases, among the latest of which is People v. Hicks, 105 N. Y. 198, 11 N. E. 653."

While the difference between the assessed value of the subways and the amount of the valuation by the commissioners in the assessment under review is quite startling, I do not find in the record sufficient evidence to compel a conclusion that the action of the respondents was arbitrary or capricious or a fraud upon the relator. When it is considered that the real estate in question is, from the nature of the case, utterly without any market value; that it is of such a character that its value cannot in any way be estimated by

a comparison with the value of any other kind of real property; and that it can be used, and used only, for the purpose for which it is employed by the relator, and only then in association with the franchise in pursuance of which it was constructed and is maintained,— the difficulty of the problem discloses itself; and the cost of the construction affords perhaps a more rational basis for a valuation than anything else, especially as it must be borne in mind that the franchise is not the subject of taxation. People v. Commissioners of Taxes, 104 N. Y. 240, 10 N. E. 437; People v. Coleman, 126 N. Y. 433–446, 27 N. E. 818. The income derivable from the property could not afford a proper basis in view of the fact that, to a large and undefinable extent, it also represents the product of the franchise. The conditions thus presented seem, therefore, under the authorities, to have authorized the respondents in taking the cost of the subways as a very important, if not determining, factor in estimating their value. It may also be said, in explanation of the difference between the assessed value and the actual value as thus found, that it does not appear affirmatively that the cost was before the respondents at the time when their first assessment of the realty was made; and, as the presumption is that they have acted in good faith in the performance of their official duties, it is reasonable to infer that the valuation which they made in the assessment which is now being reviewed represents the exercise of their judgment upon more accurate and detailed information. It appearing, therefore, that the proceedings of the respondents in this matter are not affected by reversible error, it follows that the petition and writ must be dismissed, with costs.

Writ dismissed, with costs.