(24 Misc. Rep. 25.)

MANSFIELD v. CITY OF LOCKPORT et al.

(Supreme Court, Special Term, Niagara County.   March, 1898.)

1. MUNICIPAL CORPORATIONS—SUIT TO VACATE SPECIAL ASSESSMENT—SCOPE.
   Where a suit to vacate an assessment for a street improvement purported to be for the benefit of all others assessed who might come in and contribute to its expenses, and none did so, objections to the assessment will be considered only as they affect plaintiff.

2. SAME—ACTION OF CITY COUNCIL—COLLATERAL ATTACK.
   Lockport City Charter, § 203, provides that the determination of the city council whether or not a petition for a street improvement is signed by the number of persons required by the charter as a condition to authorizing the same shall be final and conclusive.   Held, that the council's determination that the required number had signed, if made in good faith, could not, after an improvement had been made and paid for by the city, be attacked collaterally in a suit in equity to vacate the assessment.

3. SAME—REVIEW—DIRECT PROCEEDING.
   Such a determination could only be reviewed in a direct proceeding, where any error or mistake could be corrected, the determination reversed, and the council placed at liberty to proceed anew.

4. SAME—SPECIAL ASSESSMENT—FRAUD.
   The action of a city council in ordering an assessment for a street improvement may be annulled, by a suit in equity, for fraud on the part of its members.

5. SAME—ORDINANCE—VALIDITY.
   An ordinance providing for an assessment for a local street improvement is not invalid because three members of the council were influenced in its favor by fraud, where the number uncorrupted voting for it was more than sufficient to pass it under the city charter.

6. SAME—SPECIAL ASSESSMENT—SCOPE.
   A city cannot assess for a street improvement, on the ground of benefit, lands which by long user or by dedication have become a public highway.

7. SAME—NOMINAL BENEFIT.
   In a suit to vacate an assessment for a street improvement on the ground that property benefited was not assessed, a failure to assess property only nominally benefited thereby will be disregarded.

8. SAME—SPECIAL ASSESSMENT—CANAL LANDS.
   In a suit to vacate assessments for a street improvement on the ground that lands benefited were not included, no error can be predicated on a failure to assess canal lands, which, under the constitution, cannot be sold by the legislature, and are required to be forever held for canal purposes.

9. SAME—OMISSION—REMEDY.
   The remedy for an omission by a city council to assess land benefited by a local street improvement, the benefits of which are left, under its charter,

to the council to determine, is not an equity suit to vacate assessments made, but certiorari.

**10. SAME—PROPERTY SUBJECT TO SPECIAL ASSESSMENT.**

An hotel was built upon two distinct lots, each of which fronted on a different street. *Held*, that an assessment for an improvement on one of the streets was not improperly limited to the lot fronting thereon.

**11. SAME—ASSESSMENT—OMISSION.**

No error was committed by an assessor, in assessing land for a street improvement, in omitting lands not described in the ordinance from which he gains his authority.

**12. SAME—SPECIAL ASSESSMENT—GROUND FOR VACATING.**

That certain assessments for a street improvement are void is no ground for vacating others, on other property, for the same improvement.

**13. SAME—CITY COUNCIL—DETERMINING BENEFIT.**

A common council, authorized by a city charter to determine what property is benefited by a street improvement, may properly determine that only a part of parcels of land constituting the frontages, and a reasonable depth back, are benefited, where they consist of a parcel with only the corner abutting the improved street, and its building chiefly fronting and lying on another, and a parcel fronting the improved street, but extending back to another.

**14. SAME—SPECIAL ASSESSMENTS—VACATING—EQUITABLE RELIEF.**

In a suit in equity to vacate an assessment for a local street improvement, the fact that taxpayers have generally acquiesced in the assessment, and paid more than was due; that plaintiff and all others have been substantially benefited, and enjoyed the improvement for a number of years; and that the assessment was not absolutely void,—are considerations determining a withholding of such relief, especially for irregularities which plaintiff could have preserved the city's authority to correct by resorting to legal remedies.

**15. SAME—LEGAL REMEDIES.**

No constitutional right to maintain a suit in equity to vacate an assessment for a street improvement exists. A complaining party may be confined to such legal remedies as are provided, and a suit in equity will not lie, except for substantial prejudice.

**16. SAME—SUBSTANTIAL PREJUDICE—LEGAL PRESUMPTIONS.**

Where no substantial prejudice was shown in a suit in equity to vacate an assessment for a street improvement, the legal presumption of its validity, and that the city officials have performed their duty, and the rule of law that the determination of officials, under their charter authority, as to what lands are benefited, and as to the question of benefits, is conclusive and cannot be reviewed collaterally, will be invoked to uphold the assessment.

**17. SAME—FRONTAGE RULE OF ASSESSMENT.**

In making assessments for a local street improvement, where the frontage rule was adopted, equity requires that deductions should be made for corner lots and lots of irregular formation, or less than ordinary depth, because they do not sustain benefits equal to regularly formed lots, of ordinary depth, in the middle of blocks.

**18. SAME—SUIT TO VACATE—PREJUDICE.**

In a suit by a property owner to vacate an assessment for a street improvement, on the ground that not all property benefited was assessed, where it appears that property exempt therefrom was assessed for an amount, which will have to be borne by the city, more than equal to the omissions claimed, no prejudice is shown.

**19. SAME—FRONTAGE RULE OF ASSESSMENTS.**

In assessing for a local street improvement, the assessor adopted the frontage rule of assessments, determining that all land similarly situated with reference to the improvement was benefited alike, and assessed one-half the cost of pavement constructed in front thereof. *Held*, that this was not an arbitrary nor an improper exercise of his judgment, of which a taxpayer could complain.

Suit by Martha A. Mansfield against the city of Lockport and J. Charles Harrington, as city treasurer.    Complaint dismissed.

Washington H. Ransom and P. F. King, for plaintiff.
Charles M. Southworth and John E. Pound, for defendants.

LAUGHLIN, J.    This is a suit in equity to vacate an assessment on plaintiff's lands in the city of Lockport, levied to defray part of the expense of a local improvement.    The improvement was the grading, curbing, and paving of West avenue, East Main street, and East avenue, which form one continuous street from Transit street, on the west, through the principal business and residence part of the city, to the easterly city line,—a total distance of nearly 1½ miles. The plaintiff owns a tract of land situate on the northerly side of East avenue, which is used as a family residence, and for agricultural purposes.    It consists of 29.37 acres, and has a frontage of 372.21 feet on that part of the avenue so improved, and is bounded easterly by the city line, but lies wholly within the city limits.    The total cost or contract price of the improvement was $84,930.13, of which $2,066.-25 was assessed on plaintiff's said lands.    The plaintiff asks to be relieved from paying this assessment, and to have the lien thereof canceled, upon the following grounds:    (1) That the local authorities never acquired jurisdiction to order the improvement;  (2) that the common council willfully, wrongfully, and fraudulently omitted from the district of assessment abutting lands which were necessarily benefited;  (3) that the common council willfully and wrongfully failed to include all of certain indivisible parcels, part of which were included, and the assessor omitted to assess the same;  (4) that the specifications and plans, or some of them, were not filed as recited in the ordinance, and no opportunity given interested parties to inspect or object thereto;  and (5) that the assessor did not assess according to benefits, or on a uniform rule.    The action purports to be brought for the benefit of all others assessed upon this roll who may come in and contribute to the expense thereof, but no other person assessed has come in and asked to be made a party, or to be given the benefit of any judgment that may be entered herein; and therefore we are only called upon to consider these questions so far as they affect the plaintiff.    Knell v. City of Buffalo, 54 Hun, 80, 7 N. Y. Supp. 233.    These objections, and the grounds therefor, will now be considered in the order stated:

The claim of want of jurisdiction is twofold:   First that sufficient property owners did not petition for the improvement; and, secondly, that the determination of the common council as to such sufficiency was willful, wrongful, fraudulent, and unlawful.    Section 202 of the charter of Lockport confers jurisdiction on the common council to determine that the expense of such an improvement shall be defrayed by an assessment upon the real estate which it deems benefited thereby, and to order the same (such improvement), by adopting an ordinance in the form therein prescribed, specifying the portion of the city which it deems will be benefited thereby, after "there shall be filed with the city clerk a petition or petitions to the common council

for such improvement, signed by persons owning at least one third of the street frontage on the street or streets wherein such assessment is to be laid, or the lands to be assessed for the improvement." Section 203 of the charter provides as follows:

"The decision of the common council as to whether any petition or petitions for a local improvement is or are signed by persons owning at least one third of the frontage of the lands to be assessed for such improvement shall be final and conclusive, and not subject to question or appeal, but it shall not base its action on signatures on more than one petition if such petitions ask for different improvements; said decision shall be by resolution wherein the vote shall be taken by yeas and nays, and entered in the minutes, and it shall require an affirmative vote of two thirds of the aldermen in office to make such decision, or to pass any ordinance for a local improvement, except as herein otherwise provided."

Petitions for this improvement (a brick pavement, with Medina sandstone curbing), in due form, and signed by many of the owners of the lands fronting on these streets, between Transit street and the easterly city line, were duly presented to the common council on July 31, 1893, and referred to its committee on streets, which was the appropriate committee. This committee advised with the city engineer as to the sufficiency of the petitions, and consulted the general tax rolls and official maps, as did also the mayor and most of the aldermen not on the committee; and on the 7th of August, 1893, the committee reported to the council in favor of granting the prayer of the petitions, and directing the city clerk to prepare an ordinance, and the engineer to prepare specifications, and such report was unanimously adopted; the 12 aldermen (being all of the members elected to the common council) voting in the affirmative. At the same session of the council a resolution determining that such petitions were signed by persons owning at least one-third of the frontage of the lands to be assessed for the improvement was adopted by a like vote; the ayes and noes being called and recorded. On August 14, 1893, pursuant to such direction, the clerk prepared and reported a draft of a proposed ordinance for a brick pavement, with Medina sandstone curbing, according to specifications which it recites were filed with the city clerk by the engineer on August 14, 1893, and determining that the expense, when determined and entered on the minutes, be defrayed by local assessment, to be made by Assessor William J. Gold, and determining and describing the lands deemed benefited, and determining the sufficiency of the petitions. Thereupon a resolution was offered, directing the city clerk to publish the ordinance and, in and with the minutes of the council, a notice to all owners or occupants of, or other persons interested in, any of the real estate in said ordinance described, that the question of the adoption or rejection of such ordinance would be considered by the common council at a meeting thereof on August 21, 1893, and that all persons interested therein would be heard at that time as to the adoption or rejection of said ordinance. Section 205 of the charter requires such a notice, and expressly provides that it shall be sufficient notice to all such owners, occupants, and persons interested, of the facts therein stated. The proposed ordinance and resolution were referred to the committee of the whole,

which met, and, after considering them, rose, and reported in favor
of the adoption of the resolution; and the same was adopted unani-
mously.    Such notice, in due form, was embodied in the minutes
of the common council; and it and the proposed ordinance were
duly published more than three days before the time set for the
hearing, as required by the charter.    At the same session of the
council the plans and specifications filed by the engineer were re-
ferred to the committee on streets, and notice was published in
the council minutes inviting interested parties to be present at
the committee meeting on the evening of August 18th, when the same
would be considered; and they were considered at such meeting.
I do not find that the charter required such notice or hearing with
respect to the specifications.    On August 21st a hearing was duly
given by the common council on the question of the adoption or
rejection of the ordinance, pursuant to the published notice, and
after such hearing the ordinance was adopted unanimously; all of
the aldermen being present, and voting in the affirmative.    By a
like vote a resolution was adopted directing the clerk to advertise
for sealed proposals for doing the work.    The mayor vetoed this ordi-
nance on August 28th, and assigned as his reason for so doing the
objections presented, the magnitude of the improvement, and the
danger of its becoming a general fund expense if there were any
irregularities; and he urged a reconsideration, for the purpose of
making changes and alterations to satisfy the few objectors, if pos-
sible, and obviate any grounds for contesting the assessment.    The
veto was sustained by a unanimous vote, and the clerk was di-
rected to return the sealed proposals received that day.    The coun-
cil thereupon unanimously adopted a resolution directing the engi-
neer to again prepare plans and specifications, and the clerk to pre-
sent an ordinance for the improvement, in accordance with the peti-
tions on file.    On August 30th, the clerk presented a new draft of
a proposed ordinance, in some respects more clear, full, and specific
than the first; and it recited the filing of the new plans and specifi-
cations with the clerk by the engineer on that day.    Thereupon
another resolution and notice of hearing, in due form, for Septem-
ber 4th, were adopted by an affirmative vote of nine; no votes being
recorded in the negative.    The new ordinance and notice of hear-
ing were also duly and seasonably published, and at the time speci-
fied another hearing was duly given by the common council, and
no one appeared in opposition, and on motion (the ayes and noes
being called and recorded) a resolution adopting the ordinance was
passed unanimously; all members of the council being present, and
voting therefor.    At the same meeting a resolution directing the
clerk to advertise for sealed proposals was adopted by a similar vote.
The mayor approved this ordinance and resolution.    In and by sec-
tion 3 of the last ordinance, and the first ordinance as well, it was
ordained, declared, and determined that the petitions theretofore
presented to the common council, and then on file with the city
clerk, for the improvement therein described, had been signed by
the persons owning at least one-third of the street frontages of
the lands to be assessed, and that the action of the council in order-

ing the improvement was based on such petitions. The clerk duly advertised for proposals, and on September 11th reported the proposals received; and they were read, and a recess taken to examine them, after which they were referred to the committee of the whole, which met, and, after considering the proposals, rose, and reported in favor of awarding the contract to Charles Whitmore & Co., on their proposal to pave with Canton Shale Repress brick at $2.02 per square yard; and, by a resolution adopted by a vote of seven ayes and five noes, the council determined that the proposal of said firm was the lowest, and directed the mayor and city clerk to contract with them for the work. The mayor approved this resolution, and on the 18th day of September, 1893, he and the city clerk (pursuant thereto), in behalf of the city, signed a contract with said firm for doing the work (for paving the streets with Canton Shale Repress brick and Medina sandstone curbing) in accordance with the plans and specifications and proposal therefor. Thereafter the total cost of the improvement according to such contract was ascertained and determined, and the making of this assessment was ordered by resolution of the common council, adopted by an affirmative vote of 11; there being no vote in the negative.

The petitions of certain property owners, in due form, for this improvement, and the giving of the notices of hearing on the ordinance, as required by the charter, gave the common council jurisdiction; and it became the duty of that body to inquire into the sufficiency of the petitions, and determine whether they were signed by the owners of one-third of the frontages to be assessed for the improvement. The legislature, realizing that it is difficult, and in most cases impossible, for a common council to determine such questions with indisputable certainty, has protected the general fund of the city against the expense of local improvements in cases of mistakes and error as to genuineness of signatures, authority of signers, ownership of lands, and computations, by enacting that the determination of the common council, manifested by the requisite affirmative two-thirds vote, as was done in this case, and made after such hearing, and based on such petitions, shall be "final and conclusive and not subject to question or appeal." Laws 1886, c. 120, § 203. It will be observed that the plaintiff and all others interested had due notice of the hearing on the adoption of the last ordinance, involving the determination of the sufficiency of the petitions, and that neither the plaintiff nor any other person appeared in opposition to the improvement, or questioned the proposed determination that the same had been applied for by the necessary proportion of property owners. It is manifest from the action of the council on the mayor's veto message, and from the testimony of the aldermen, that there was an honest effort to remedy defects and remove objections; and, no objections having been made to the last ordinance, they had reason to believe that they had accomplished the end desired. If the members of the common council acted honestly, and had any facts before them tending to support their determination, there would seem to be no propriety in a court of equity's undertaking to review such determination at this late day, after the improvement has been made, and paid for by the city. The determination of the common council,

if made in good faith, pursuant to this statute, surely cannot be attacked collaterally, as in this suit in equity, for any such errors or mistakes. Such determination is an adjudication in the nature of a judgment, and can only be reviewed by a direct proceeding, where the error or mistake may be corrected, or the determination may be reversed, and the municipal authorities may be at liberty to proceed anew. Porter v. Purdy, 29 N. Y. 106; In re Central Park Com'rs, 50 N. Y. 493; In re Kiernan, 62 N. Y. 457; Hunt v. Hunt, 72 N. Y. 217; In re Department of Parks, 73 N. Y. 565; People v. Common Council of City of Troy, 78 N. Y. 33; In re Kendall, 85 N. Y. 306; De Peyster v. Mali, 92 N. Y. 269; Moody v. City of Lockport (MS. opinion); Miller v. City of Amsterdam, 149 N. Y. 288, 43 N. E. 632.

Section 226 of the Lockport charter provides that an appeal may be taken to the county court from such an ordinance within 20 days from its first publication, and that, if the county judge is disqualified, the appeal shall be heard in the supreme court. Section 228 requires, where such an appeal is taken, a return by the city clerk, within 20 days, of all the proceedings of the council and of the other officers of the city in the premises, and all petitions, papers, and other documents relating to the ordinance, or relating or pertinent to any or all the questions involved in such appeal; and the court is expressly authorized to compel a further or amended return as often as the same may be necessary. Section 229 provides that the appeal may be brought to a hearing at any term of the county court, or, if in the supreme court, then, on eight days' notice, at a special term in Niagara, Erie, or Orleans counties, and that all proceedings shall be had and conducted, as nearly as may be, in accordance with the provisions of the Code of Civil Procedure and the general rules of practice, except as therein otherwise provided. Section 230 provides that "upon the hearing of the appeal the appellate court shall hear and determine all questions as to the legality or regularity of the matter or proceedings appealed from, and if such matter or proceedings appear to be not in accordance with law, said appellate court shall give judgment setting aside, vacating and annulling the same, and the same shall thereafter be held and deemed illegal and invalid," and that, if in accordance with law, the judgment shall be an affirmance. It is further provided in the same section that if a local assessment (section 227 provides for a similar appeal from an order of the council confirming such an assessment) be vacated on account of any irregularity in the proceedings, or defect in levying the same, the council may cause a new assessment to be made. The plaintiff duly took an appeal to the county court from the ordinance, and a return thereto was promptly filed, but the plaintiff has not brought the appeal on for a hearing. An expression of an opinion as to whether the action of the council in determining the sufficiency of these petitions can be reviewed on the appeal from the ordinance would be obiter dicta, and not binding on the court in which such appeal is pending; and therefore I shall not attempt to decide the point. If this question be reviewable on the appeal, then that furnishes an adequate remedy; and the appeal having been taken, in form, to review it, the question is pending in another litigation between the same parties, which has

been pleaded here as a bar, and such we hold it to be. Bell v. Merrifield, 109 N. Y. 202, 16 N. E. 55. But if the legislature, while providing for an appeal from the ordinance and assessment, has seen fit to exempt the action of the council in determining the sufficiency of the petitions from such appeal and review, surely a court of equity ought not to travel beyond the bounds of well-established precedent, and assert its jurisdiction over such a question, when the legislature could have authorized, and frequently does authorize, the local authorities to make such improvements without any petition or consent of property owners. People v. Board, etc., of City of Albany, 2 How. Prac. (N. S.) 423; Genet v. City of Brooklyn, 99 N. Y. 296, 1 N. E. 777; Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682; Van Deventer v. Long Island City, 139 N. Y. 133, 34 N. E. 774.

Counsel have exhaustively argued the question as to the authority of a court of equity to annul such a determination of a municipal legislature for fraud; but no case in point has been cited, and I believe that the proposition has not been directly involved in any of the reported decisions. I have for a number of years had occasion to give the subject some little consideration, and have no doubt as to the jurisdiction of courts of equity, or as to the propriety of intervening, in such cases. I think the claim for such authority is sustained by legislation and analogous decisions. The law known as the "Taxpayers' Act," authorizing the courts to enjoin threatened illegal or fraudulent acts of public officers, which include municipal councils, emanated, not from a want of jurisdiction in the courts, but for the purpose of giving individual taxpayers a standing in the courts, where those who represent the city as its governing body, and should protect its taxpayers, are either parties to the fraud, or connive thereat. Ayers v. Lawrence, 59 N. Y. 192; Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263. Chapter 338, Laws 1858, as amended by chapter 312, Laws 1874, provides a summary remedy to review local assessments in New York City by petitions, and expressly provides that no suit in equity shall be brought to set aside such assessments on the ground of fraud. Eno v. Mayor, etc., 68 N. Y. 214. The learned justice writing in People v. Board, etc., of City of Albany, 2 How. Prac. (N. S.) 423, assumed that, if fraud were shown, such a determination, made final by the statute, could be reviewed. Assessments have been set aside for fraud on the part of assessors. Brennan v. City of Buffalo, 13 App. Div. 453, 43 N. Y. Supp. 597. Municipal contracts may be enjoined and annulled for fraud, and why should not the court have power to annul assessments for the fraud of the common council, as well as that of other officers? I think such action, whether in the form of resolutions or ordinances, is not legislative, in the sense that the motives of the legislators cannot be inquired into, to vitiate their action. Davis v. Mayor, 1 Duer, 458–508; Id., 9 N. Y. 263; State v. Cincinnati Gaslight & Coke Co., 18 Ohio, 272; Dill. Mun. Corp. (4th Ed.) § 211; Brady v. Mayor, etc., 20 N. Y. 312; Baird v. Mayor, etc., 96 N. Y. 567; Nelson v. City of New York, 131 N. Y. 4, 29 N. E. 814.

This improvement was needed, and was generally favored by the taxpayers. I am not satisfied that the vote of any member of the common council was fraudulently cast in favor of the adoption of

the ordinance for the improvement. Alderman Davis was at that time the agent of the Canton Shale-Brick Exchange, and expected a commission on all brick of that company's manufacture used by the city contractors. The petitions and specifications did not, however, require the use of this particular kind and brand of brick, but permitted open competition. In view of these facts, and of the further fact that nearly all of the property owners who took an interest in the matter wanted a brick pavement, and there being no satisfactory evidence that any other member of the common council, or city official, was either directly or indirectly interested at that time, I do not feel warranted in finding that even Alderman Davis would not have voted for the improvement ordinance but for the fact that he was such agent, or that his vote on the adoption of such ordinance was controlled by fraud or corruption. Later on, in voting on awarding the contract, he was directly interested in having it awarded to the contractors who had submitted proposals for furnishing Canton Shale Repress brick, one of whom, I have no doubt, in consideration, agreed to, and did, give him $1,000, represented by two $500 accommodation notes. It has also been established to my satisfaction that the vote of Alderman O'Connor on awarding the contract was improperly influenced and controlled by a promise made to him by representatives of said Shale-Brick Exchange, at the time the contract was awarded, that, if the contract were awarded as he voted to award it, the brick company would give him $600 for pretended services in inspecting and supervising the piling of the brick on the street along the line of work. The evidence shows that the brick company's contract with Whitmore & Co. only required it to deliver the brick free on board the cars at Lockport. It had nothing to do with unloading the brick, or delivering them on the street. The pretended services were not rendered, but the money was paid pursuant to agreement. It should be said here that Alderman O'Connor's version of this transaction has not been heard by this court, and we do not hold or decide that he has committed a crime, nor is it our province to do so. We merely rule that the evidence before us indicates that he was actuated by fraud in awarding this contract to Whitmore & Co. Counsel for plaintiff has strenuously argued that the court should also find that Alderman Stevens was bribed by the brick company. This request is largely based on his close, and somewhat suspicious, relations with Alderman Davis. It is a general rule of law that public officials are entitled to the benefit of the presumption that they have acted honestly in the discharge of public duties, and, to warrant a contrary finding, there must be sufficient evidence of fraud to exclude the supposition of mistake. In re Babcock, 23 How. Prac. 118; People v. Barker, 16 Misc. Rep. 258, 39 N. Y. Supp. 106; People v. Barker, 146 N. Y. 304 40 N. E. 996. As has been seen, no fraud is alleged with respect to awarding the contract, and the evidence as to fraud at that time was only received as bearing on the alleged fraud in adopting the ordinance. I am of opinion that, upon principle and grounds of public policy, the action of the common council in adopting the ordinance by the unanimous affirmative vote of twelve could not be annulled, even if it satisfactorily appeared that all three of these

aldermen whose good faith is questioned acted fraudulently and corruptly in so voting, for the reason that there would still be an honest three-fourths vote in favor of the ordinance. Owners of Ground v. Mayor, etc., of Albany, 15 Wend. 378; Throop, Pub. Off. § 567; 19 Am. & Eng. Enc. Law, 459; Brooklyn El. R. Co. v. City of Brooklyn, 11 App. Div. 128, 42 N. Y. Supp. 683.

The next question to be considered is, did the common council willfully, wrongfully, or fraudulently omit from the district of assessment lands abutting on the improvement, which were necessarily benefited? The omission of lands acquired and held by the state as part of the Erie Canal furnishes the sole ground of this complaint. The blue lines which mark the exterior boundaries of the Erie Canal lands are 92½ feet apart; the water way being several feet narrower. At about the center of the city of Lockport, the canal, which runs nearly east and west, is spanned by a wooden bridge, known as the "Big Bridge," about 75 feet in width, and extending along the canal nearly 300 feet. The northerly blue line passes 7.90 feet northerly of the northerly side of this bridge, and the southerly blue line passes about 9.25 feet southerly of the southerly side of the bridge. East Main street extends southeasterly from the bridge, and West avenue extends northwesterly from the bridge, on the lines of Main street continued across the bridge, so that the line of travel from one to the other is diagonally across the bridge. The ordinance and specifications provided for paving each of those streets up to the bridge. Other streets extend along the canal banks, and connect with the Big bridge; and from time immemorial this bridge, and all lands abutting thereon on the north and south, have been used and enjoyed by the public, either as an open market place, or as a public highway, and such lands have not been, and are not now, used for any other purpose. Whether the strips of land hereinbefore described as lying between the bridge and the blue lines were owned by the state, and dedicated to this public use, or whether they were acquired by the city, or dedicated by other owners, does not appear from the evidence; but, in the view I take of the case, it is not very material. The city could not have assessed for a local improvement those lands which have by long user or dedication become a public highway. Smith v. City of Buffalo, 90 Hun, 118, 35 N. Y. Supp. 635. Possibly the common council could have determined that the narrow strips of land forming the banks and support for the canal, upon either side thereof, east and west of the Big bridge, and considerably removed from this improvement, were benefited thereby, and could have assessed the same; but it has not been satisfactorily shown how such lands could receive more than mere nominal, if any, benefit. The law does not deal with trifles, and it is incumbent on the plaintiff to show substantial prejudice. Colman v. Shattuck, 62 N. Y. 363; O'Reilly v. City of Kingston, 39 Hun, 287; Workman v. City of Worcester, 118 Mass. 168; In re Voorhis, 5 Thomp. & C. 345. The constitution expressly provides that such lands cannot be sold, even by the legislature, and requires that they shall be forever held and used for canal purposes. No error can be predicated on the omission of such lands from a district for a local assessment. State Const. art. 7, § 7; Elwood v. City of

Rochester, 43 Hun, 114; People v. Gilon, 41 Hun, 510; People v. Mayor, etc., of City of Syracuse, 63 N. Y. 291; In re Mayor, etc., of City of New York, 11 Johns. 77; In re Albany Street, 11 Wend. 149; Owners of Ground v. Mayor, etc., of Albany, 15 Wend. 378; Gilbert v. City of New Haven, 39 Conn. 467; Railroad Co. v. Siders, 88 Ill. 321–327. The Hassen Case, 65 N. Y. 516, and 67 N. Y. 528, is clearly distinguishable; for there the common council had determined that the state land was benefited, and the assessors failed to impose the assessment as directed by the ordinance. The court did not consider the limitation upon the use of the property, because that question was not directly involved; and, although the premises in question there were a large tract of lands adjacent to the canal, yet that fact is not alluded to in the opinion. I have not overlooked the recent case of Monroe Co. v. City of Rochester, 154 N. Y. 570, 49 N. E. 139, where Judge Gray, in delivering the opinion of the court, states that there is no authority to make any distinction with respect to the uses of property coming under assessment. I think that statement must be read in view of the particular facts and case which the learned justice had under consideration at the time. The rule that assessors may take into consideration, in determining the amount of benefit, the fact that property is permanently devoted to a particular use, has been repeatedly held by the general term, and affirmed by the court of appeals, and it is founded upon reason; and, if it had been intended to announce a different rule, I believe the question would have received greater consideration. Local assessments have been sustained by the trial courts in Buffalo, where canal lands abutting on the improvement were not assessed, and where the other owners not only paid for improving in front of the canal lands, but also for a retaining wall along the same. The connection between and relative location of the property assessed and the improvement, and the ability of the owner of the land to use and enjoy the improvement, all enter into the question of benefits. Voght v. City of Buffalo, 133 N. Y. 463, 31 N. E. 340. If the canal lands should have been assessed, their omission was an error of judgment on the part of the common council in determining the lands benefited; and the plaintiff's remedy was by certiorari, and not by suit in equity. Kennedy v. City of Troy, 77 N. Y. 493; Hoffeld v. City of Buffalo, 130 N. Y. 387, 29 N. E. 747; Monroe Co. v. City of Rochester, 154 N. Y. 570, 49 N. E. 139.

The next complaint is that the common council willfully and wrongfully failed to include in the district of assessment all of certain indivisible parcels of lands, part of which were included, and that the assessor failed to assess the lands thus omitted. The Grand Hotel is built at the junction of West avenue and Canal street, upon two lots, which are, according to the record title and the official maps, separate and distinct parcels. One of these lots fronts upon West avenue, and is assessed. The other fronts on Canal street, and is not assessed. The claim is made that, because the hotel building extends over both, that renders them indivisible, and conclusively establishes that both are benefited, and requires that both should be assessed. I am unable to agree with this contention, and believe that the common council exercised good judgment

in confining the assessor to the lands actually benefited. There would have been no particular harm in spreading this assessment upon both of these lots, but, had the common council included both, the assessor might have been misled into thinking that the common council deemed both specially benefited alike. The object of the charter provision requiring the common council to define the district of assessment was to limit the assessor, and prevent his including lands, the benefits to which are entirely speculative.

The office and theater building known as "Hodge Opera House" occupies a large tract of land at the northwesterly junction of Main and Market streets, with the corner only abutting on Main street; and the building actually fronts upon, and lies principally upon, Market street. By the ordinance the common council determined that only the westerly $16\frac{1}{2}$ feet of this property, including the corner abutting on Main street, was benefited. The Young Men's Christian Association Building occupies nearly the entire parcel of land situate at the southeasterly corner of Main and Locust streets, having a frontage of 56 feet on Main street, and extending in depth back at right angles 165 feet to Pearl street, and abuts on the latter street about 116 feet. It is bounded easterly by an alley running from Main to Pearl street. The entire frontage, and to a depth of 70 feet only, was included in the ordinance, as benefited. The assessor adopted the frontage rule of assessment, and assessed the same amount on the parcels of land, in proportion to their frontage, that he assessed on all other lands. It has been held that a local assessment may not be spread upon an entire tract of land, by the description contained in the deed or general tax rolls, where only part of the land is benefited, although all is owned together; and it has also been held that where a whole parcel of land is benefited, but the assessment is spread only on the frontage, it is valid. People v. City of Buffalo, 36 N. Y. Supp. 181, 86 Hun, 618; Id., 147 N. Y. 675, 42 N. E. 344; Parmelee v. Youngstown, 43 Ohio St. 162, 1 N. E. 319. The assessor was, of course, confined to the lands described in the ordinance, and he had no power to include these entire parcels. Consequently no error was committed by him in omitting them. In re Churchill, 82 N. Y. 288; People v. Wilson, 119 N. Y. 515, 23 N. E. 1064.

It is urged that these assessments are void, and not enforceable, because these properties are indivisible. If that were conceded, the plaintiff would not be prejudiced, and it would furnish no legal or equitable ground for setting aside the assessment upon her lands. The evidence shows that the owners of these respective parcels have paid all installments of the assessments due, and some in advance, and there is therefore no probability that the payment of any of the installments will be resisted. But even if payment should be successfully resisted, or if the city should be unable to enforce payment, it has no authority, under its charter, to make a reassessment, and the plaintiff cannot be compelled to bear any of the deficiency. Tingue v. Village of Port Chester, 101 N. Y. 294, 4 N. E. 625. The only debatable point is, therefore, whether the common council had authority to determine that only that part of the parcels in question,

constituting the frontages, and a reasonable depth back from the improved street, was specially benefited, and that they should be assessed only to that extent. I think the common council had jurisdiction to determine this question, and while such course is somewhat unusual, and I might differ with them, and reverse their judgment, if the question were presented by appeal or by writ of certiorari (People v. City of Buffalo, 147 N. Y. 675, 42 N. E. 344; In re Gardner, 41 How. Prac. 255, which arose under Lockport charter), yet the determination of what lands were benefited involved the exercise of discretion and judgment; and the court should not, in a collateral suit in equity, without other evidence that they acted upon an erroneous principle, or upon a rule wrong in law, annul their determination, where such a decision would have the inequitable effect (inevitable in this case) of entirely relieving the lands specially benefited from bearing any part of this expense, other than their proportion of a general tax upon the whole city to defray the same. It appears from the evidence that the taxpayers generally have acquiesced in their assessments, and are paying the same, and that a much larger sum has been paid in upon the roll than was due. It is manifest, also, that the improvement was a very substantial special benefit to the plaintiff's lands, and to all lands assessed therefor, and that such lands and their owners have now, for about four years, had the benefit and advantage of the improvement. If the assessment were absolutely illegal or void, of course these considerations would not justify a court in withholding relief; but where it becomes a question of equity, and the court is vested with discretion, then it is proper that such considerations should be controlling, especially where, as here, the plaintiff, instead of pursuing her legal remedies, which would have preserved to the city authority to correct the proceedings and assessment, has pursued a remedy which, if successful, results in her lands being entirely relieved of any assessment for this improvement, which must have largely increased their value and accessibility. Welty, Assessm. §§ 210, 363; In re McGowan, 18 Hun, 434; In re Lord, 78 N. Y. 109; Moore v. City of Albany, 98 N. Y. 396; Lewis v. City of Utica, 67 Barb. 456; Lyth v. City of Buffalo, 48 Hun, 180; Strusburgh v. Mayor, etc., 45 N. Y. Super. Ct. 508; Osterhout v. Hyland, 27 Hun, 170. A party has no constitutional right to maintain a suit in equity to vacate a local assessment, and he may be confined to such legal remedies as are provided; and, where a suit in equity lies, he must show substantial prejudice. Lennon v. Mayor, etc., 55 N. Y. 361; People v. Wasson, 64 N. Y. 167; MacLaury v. Hart, 121 N. Y. 636, 24 N. E. 1013; Garratt v. Trustees, etc., 135 N. Y. 436, 32 N. E. 142; In re Peugnet, 67 N. Y. 441; In re Kendall, 85 N. Y. 306; Tifft v. City of Buffalo, 82 N. Y. 204; In re Marsh, 83 N. Y. 435. It is more equitable and just in this case to give the city the full benefit of the legal presumption that the assessment is valid, until clear and satisfactory proof of its invalidity is presented, and that its officials have properly performed their duty, and to apply to these facts the well-settled rule of law that the determination of the legislature, or of the local authorities authorized by the legislature, as to what

lands are benefited, and as to the question of benefits, is final and conclusive, and cannot be reviewed collaterally. Smith v. City of Buffalo, 90 Hun, 118, 35 N. Y. Supp. 635; Harriman v. Howe, 78 Hun, 280, 28 N. Y. Supp. 858; Morse v. City of Buffalo, 35 Hun, 613; Tingue v. Village of Port Chester, 101 N. Y. 294, 4 N. E. 625; Colman v. Shattuck, 62 N. Y. 348; Bouton v. City of Brooklyn, 2 Wend. 395; Le Roy v. Mayor, etc., 4 Johns. Ch. 352; Lyon v. City of Brooklyn, 28 Barb. 612; In re Church Street, 49 Barb. 455; In re Broadway, 63 Barb. 575; In re Cruger, 84 N. Y. 621, 622; Kennedy v. City of Troy, 77 N. Y. 493; Genet v. City of Brooklyn, 99 N. Y. 306, 1 N. E. 777; Spencer v. Merchant, 100 N. Y. 588, 3 N. E. 682; In re Sackett Street, 4 Hun, 96; People v. Lohnas, 54 Hun, 604, 8 N. Y. Supp. 104; Voght v. City of Buffalo, 133 N. Y. 463, 31 N. E. 340; Hoffeld v. City of Buffalo, 130 N. Y. 387, 29 N. E. 747; Railroad Co. v. Kane, 9 Hun, 508; Osterhout v. Hyland, 27 Hun, 170; Cooley, Tax'n (2d Ed.) 662, 763, 775.

The objection with respect to filing the plans and specifications was not urged or argued upon the trial. The plans and specifications were filed as recited in the ordinance, and interested parties had sufficient notice thereof, and opportunity to inspect or object thereto.

The last question to be considered is whether the assessor spread the assessments upon the lands described by the common council as benefited, and in proportion to such benefits. It is claimed that the assessor failed to assess all of the lands included within the district of assessment. If any lands were omitted, it is evident that they were omitted through mistake. But it does not satisfactorily appear that any assessable lands were in fact omitted. The complaint in this respect relates to a few feet of land that is a public alley, to a few feet of land that is part of a public street, or to cases where there is a discrepancy between the record and actual frontage as shown by official maps, or where there is a clerical error as to the frontage in the assessment roll, and where the amount of the assessment shows that the parcel was assessed for its whole frontage, or to cases of corner lots, or lots of irregular shape or less than the ordinary depth; and, while the whole parcels were assessed, deductions or allowances were made from the frontage rate, on account of their not sustaining the same amount of benefits as regularly formed lots of ordinary depth, and situated in the middle of blocks. It is evident that, where the frontage rule is adopted, equity requires that such allowances and deduction shall be made in some manner in such cases. It is not very material whether they be made by first assessing such lots, and deducting the amount thus assessed from the total to be assessed, and then dividing this balance by the total feet frontage of the unassessed lands, and thus getting the frontage rate, or whether (as is often done, and has been repeatedly sanctioned by the courts) the assessor, deeming a particular lot, having 25 feet frontage, only benefited equal to an interior lot, of uniform width and ordinary depth, having a frontage of 20 feet, for the purpose of ascertaining the ratio calls the former 20 feet frontage; for in that case he assesses all of the land, but does

not assess the irregular or corner or shallow lot at the same rate per foot frontage as adjacent lots, because he deems the benefits to it less.

Upon the trial I was of opinion that the Union School lands were assessable for local improvements. In view of the public policy against exempting lands from such assessments, I did not suppose that the legislature had employed such language as to clearly show that it was intended to exempt lands held for educational purposes from local assessments; but, upon examination of the act (Laws 1847, c. 51, § 23), I am of opinion that such lands were not assessable. The premises occupied by Lockport Union School, title to which is in the board of education, have a frontage of 232.6 feet upon this improvement, and are assessed therefor at the same rate as other lands similarly situated,—the sum of $1,619.20. This assessment should and could have been lawfully spread upon the other assessable lands upon the line of the improvement. Even if we deemed the complaint well founded as to all of the alleged irregularities with respect to omitting lands, still, this assessment, levied upon exempt lands, and which must be borne by the city, is much more than was, in any view of the case, omitted from all the lands not assessed, and which the plaintiff contends should have been assessed; and for that reason, also, the plaintiff has not been prejudiced. In re Ferris, 10 N. Y. St. Rep. 480, and cases cited.

The assessor adopted the frontage rule of assessments; that is, he determined that all lands similarly situated with reference to this improvement were benefited alike,—the cost of one-half the pavement as constructed in front thereof. This action of the assessor is complained of as arbitrary, and not a proper exercise of his judgment. The frontage rule of assessment has been repeatedly approved and sanctioned by the courts, and adopted by the legislature in almost innumerable special acts, and experience demonstrates that, for such an improvement as this, it is quite as just and equitable as any other method of arriving at the amount to be assessed upon each parcel of land. The principal complaint is that many parcels of land, occupied by large business blocks, are assessed no more than other vacant parcels of the same dimensions, and otherwise similarly situated with reference to the improvement. The frontage rule has also been sustained by the court of appeals in similar cases. The assessor, having full knowledge of the dimensions and location of all the parcels of land within the district of assessment, and of the improvements thereon, was obliged to determine the proportion of benefits, as well as the amount of benefits. He could not take up each parcel, and assess it, independently, the amount he deemed it benefited; for by so doing he might raise more or less than the sum needed, and he would be disregarding the other essential requirement,—of assessing in proportion to the benefits. Upon the action of the common council, determining the amount of the expense to be raised by local assessment, and determining that the lands described in the ordinance were specially benefited, and directing the assessor to levy the whole amount thereon, there arose a conclusive presumption, so far as collateral attack by suit in equity

is concerned, that the lands within such district were in fact all benefited, and that together they were benefited to the extent of the amount the assessor was directed to assess thereon. His principal duty was therefore not, as contended by counsel for plaintiff, to determine separately how much each parcel would be increased in value by the improvement, by determining its value before and after, but to determine in what proportion to one another the respective parcels were benefited. In re Mead, 74 N. Y. 221; In re Church, 92 N. Y. 6; Genet v. City of Brooklyn, 99 N. Y. 308, 1 N. E. 777. It was competent for the assessor to determine that a vacant lot was benefited just as much as an improved lot similarly situated. It is not the building that is increased in value by a pavement, but the land itself. It would often cost less to duplicate the building after the approach to the premises is made more accessible by the improvement than before. If the building could be replaced for less, it is difficult to see how it would be worth more. State v. Mayor, etc., of City of Newark, 31 N. J. Law, 360–364. The owner of the vacant land may, the next day after the assessment is levied, invest more in improvements upon his land than his neighbor, who built before the levying of the assessment. The adoption of a different rule for such assessments would, in addition to working such injustice, be putting a premium upon leaving lands vacant until such improvements are made, and would stifle enterprise, investments, and progress, which are so essential to the prosperity of a city that public policy forbids the encouragement of a rule of local assessments in proportion to valuations. Voght v. City of Buffalo, 133 N. Y. 463, 31 N. E. 340; In re Eager, 46 N. Y. 109; In re Cruger, 84 N. Y. 619; O'Reilley v. City of Kingston, 114 N. Y. 439, 21 N. E. 1004; Hoffeld v. City of Buffalo, 130 N. Y. 387, 29 N. E. 747; In re Gardner, 41 How. Prac. 255; Lilienthal v. City of Yonkers, 6 App. Div. 138, 39 N. Y. Supp. 1037; Osterhout v. Hyland, 27 Hun, 170. The following cases in other states show how generally it has been held that assessors may adopt the frontage rule of assessment, regardless of improvements: Cleveland v. Tripp, 13 R. I. 50; Upington v. Oviatt, 24 Ohio St. 232; State v. Fuller, 34 N. J. Law, 227; Whiting v. Quackenbush, 54 Cal. 306; King v. City of Portland, 2 Or. 146; Allen v. Drew, 44 Vt. 174; City of Ludlow v. Trustees Cincinnati S. Ry. Co., 78 Ky. 360; Sheley v. City of Detroit, 45 Mich. 431, 8 N. W. 52; White v. People, 94 Ill. 604; Stroud v. City of Philadelphia, 61 Pa. St. 255; Neenan v. Smith, 50 Mo. 525; Parker v. Challiss, 9 Kan. 155.

The plaintiff's lands were not assessed at the same rate per foot front as the lands on the business part of the street, for the reason that the pavement is not so wide in front of her lands as in the heart of the city. It does seem that the assessment upon the plaintiff's lands is large, and that the frontage rule might be inequitable in this particular case. It must be remembered, however, that this assessment roll, and the action of the assessor in the premises, have been unanimously approved and confirmed by the common council and the mayor, all of whom possessed greater knowledge of all the facts necessary to a proper determination of this question than

could be presented to the court. They have acted judicially, and had no interest in doing what they believed to be an injustice to any person assessed. The assessor appears to possess, and I think he does possess, greater intelligence than is shown by some of his answers to questions. He was not called to the stand until more than three years after he spread this assessment roll, and his official action should not be annulled, with all the inequitable consequences that would follow in this case, on account of any careless or unintelligible answers given by him at this late day, when his memory is not clear. This assessor did not act arbitrarily in this matter. The first assessment roll was not made until long after the plaintiff appealed from the ordinance, and the city authorities had determined to defend and sustain it. After this first roll was made, objections were filed to it; and a hearing was had before the common council, and the roll was annulled. The assessor was aware of these objections, and of the arguments made against the roll. He freely conferred with the mayor, and was advised by the learned city attorney, now the county judge of that county. He knew well what his duty was in the premises, and how he should make this assessment roll. The most that the plaintiff was entitled to was the assessor's honest judgment in apportioning these benefits, and I have no doubt whatever that the assessor acted honestly and conscientiously, and had in mind to assess each parcel its just and equitable proportionate part of the total amount which the common council directed him to levy. We cannot annul assessment rolls because we think a more intelligent assessor, or one who, years afterwards, could give a better account of his work, should have been elected.

While these conclusions lead to a dismissal of the complaint, I do not award costs against the plaintiff. A public service has been performed by the plaintiff, in bringing this action, and exposing fraud and corruption on the part of a public official, which has resulted in his prosecution and conviction. For these reasons, if I had the power to award costs to the plaintiff, or to cancel any excess of interest that has been added to her assessment pending this litigation, I would do so. A penalty should not be attached to bringing an action disclosing such facts as have been shown on this trial, and I recommend that whatever excess of interest has been added to this assessment as a penalty for nonpayment be canceled by the city authorities. In view of the fact that there is no provision of the charter making such assessments presumptively valid, and that the only method for their enforcement is by a foreclosure of the lien of the assessment, in which action the validity of the assessment could be contested, it is not entirely clear that this suit in equity could be maintained; but the conclusion arrived at on the questions involved renders it unnecessary to consider this question at length.

The complaint is dismissed upon the merits, but without costs.