THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT H. SCOTT, Appellant, *v.* WILLIAM R. PITT et al., Constituting the Board of Sewer Commissioners of the City of New Rochelle, Respondents.

1. CONSTITUTIONAL LAW — POWER OF LEGISLATURE TO IMPOSE ASSESS-MENT ACCORDING TO FRONTAGE — PROPERTY OWNER NOT ENTITLED TO BE HEARD UPON PRINCIPLE OF APPORTIONMENT. The legislature has power to distribute the cost of a local improvement, or some part of it, upon property located upon the street where the improvement is made, according to the frontage of lots, or upon the basis of a specified sum per linear foot, and the property owner is not entitled to be heard at any time upon the justice or propriety of the principle upon which the assessment is to be apportioned.

2. DUE PROCESS OF LAW. Section 208 of the charter of the village of New Rochelle (L. 1899, ch. 128), which fixes the amount of sewerage assessments upon abutting property at a definite sum per front foot, is not unconstitutional and void as involving a taking of property without due process of law because it fails to provide for a hearing as to benefits or the justice and equity of the principle upon which the burden is to be imposed, and is a valid exercise of legislative power.

*People ex rel. Scott* v. *Pitt,* 64 App. Div. 316, affirmed.

(Argued January 7, 1902; decided January 28, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 15, 1901, dismissing a writ of certiorari to review a local assessment made by the defendants against the property of the relator.

The facts, so far as material, are stated in the opinion.

*Charles H. Young* and *J. A. Young* for appellant. Section 208 of chapter 128 of the Laws of 1899 is unconstitutional and void in that said section arbitrarily fixes an assessment on the petitioner's property without allowing the petitioner any opportunity to be heard as to the cost or value of the improvement provided for by said assessment, or the fairness or justness of said assessment, and that said assessment levied herein under that section is levied without due process of law,

522          People ex rel. Scott v. Pitt.          [Jan.,

Points of counsel.          [Vol. 169.

and it is contrary to the Constitution of the State of New York and the fourteenth amendment of the Constitution of the United States. (*Stuart* v. *Palmer*, 74 N. Y. 183 ; *Barhyte* v. *Shepard*, 35 N. Y. 238; *Clark* v. *Norton*, 49 N. Y. 243 ; *Wynchamer* v. *People*, 13 N. Y. 378; Cooley on Taxn. 65, 266; *Genet* v. *City of Brooklyn*, 99 N. Y. 296 ; *Spencer* v. *Merchant*, 100 N. Y. 585 ; *F. I. District* v. *Bradley*, 164 U. S. 112; *French* v. *B. A. P. Co.*, 181 U. S. 324 ; *Williams* v. *Eggleston*, 170 U. S. 304; *Norwood* v. *Baker*, 172 U. S. 269.) The writ herein was issued in time. (*People ex rel.* v. *Fire Commissioners*, 73 N. Y. 437 ; *People ex rel.* v. *McLean*, 64 Hun, 205.)

*Michael J. Tierney* for respondents. The legislature possessed the power to provide the method or scheme of assessment in question and it thereby determined the fact that appellant's property was benefited to the extent of the assessment, as was its right and power. (*People ex rel.* v. *Mayor, etc.*, 4 N. Y. 419 ; *Litchfield* v. *Vernon*, 41 N. Y. 123 ; *People ex rel.* v. *Flagg*, 46 N. Y. 401 ; *Matter of Van Antwerp*, 56 N. Y. 264 ; *Matter of Sackett, etc., Sts.*, 74 N. Y. 95 ; *Genet* v. *City of Brooklyn*, 99 N. Y. 296 ; *Spencer* v. *Merchant*, 100 N. Y. 585 ; *O'Reilly* v. *City of Kingston*, 114 N. Y. 439 ; *State* v. *County of Kings*, 125 N. Y. 312 ; *M. B. Co.* v. *Trustees, etc.*, 15 App. Div. 139.) The statute amply satisfies as to notice to persons to be assessed ; appellant had notice and was heard; he thereby waived the right to question the constitutionality of the act in that respect. If the assessment is deemed to have been finally determined September 26, 1900, the proceedings in the case at bar should have been dismissed without regard to the merits. (*Conde* v. *City of Schenectady*, 164 N. Y. 263 ; *Vose* v. *Cockcroft*, 44 N. Y. 415 ; *McLoughlin* v. *Miller*, 124 N. Y. 517 ; *Matter of City of Amsterdam*, 126 N. Y. 164 ; *Stuart* v. *Palmer*, 74 N. Y. 183 ; *Hagar* v. *Reclamation Dist.*, 111 U. S. 701 ; *Spencer* v. *Merchant*, 100 N. Y. 588 ; *Williams* v. *Eggleston*, 170 U. S. 304 ; *Paulson* v. *City of Portland*, 149 U. S. 30.) Appellant's claim that

the common council should have made the assessment in question is without merit. (*Smith* v. *City of Buffalo*, 159 N. Y. 431.)

O'BRIEN, J.   The order, from which this appeal was taken, dismissed the writ of certiorari procured by the relator to review an assessment for a local improvement, and the order also confirms the assessment.   The assessment was imposed as part of the expense of the construction of a sewer in the city of New Rochelle, in a street in front of the relator's property. It appears that prior to the incorporation of the city by chapter one hundred and twenty-eight of the Laws of 1899 the then village authorities had projected and mapped out an extensive sewer system under chapter three hundred and eleven of the Laws of 1888, and chapter two hundred and one of the Laws of 1889 and other statutes.   When the city charter went into effect this system of sewerage had been nearly completed and the assessment in question was made under the provisions of the city charter.   It seems to be admitted that the sewer system projected and planned under the village government was authorized by law, and that the scheme for the imposition of local assessments to defray a portion of the expenses was entirely valid.   What the relator claims is that the method of imposing local assessments prescribed by the new charter, under which the assessment in question was made, violates the provision of the Constitution which forbids the taking of property without due process of law.

The questions arising upon this appeal must be decided upon the facts as they appear in the relator's petition for the writ and the return thereto by the municipal authorities.   It appears from the allegations of the petition that the proceedings for the construction of the sewer in question could be initiated either by a resolution of the common council or of the city board of health.   The board of health passed a resolution declaring the construction of the sewer to be necessary for the protection of the public health, and transmitted the

same to the common council and the latter body thereupon
directed the construction of the sewer. In the conduct of
the proceedings resulting in the assessment the various pro-
visions of the charter were strictly complied with and the
assessment is assailed only upon one ground, and that is that
the legislature had no power, under the Constitution, to enact
that section of the charter which provides for the assessment.
The provisions of the section of the charter, which it is con-
tended is violative of the Constitution, are as follows : " There
shall be assessed and levied by the board of sewer commis-
sioners by direct tax or assessment on the property located
or fronting on the street, road, lane or alley, through which
any sewer may be laid or built, or on property draining
therein, for each linear foot of sewers built within said street,
road, lane or alley, three dollars and forty cents per linear foot
of sewers laid or built under the provisions of this article,
and when any sewer shall be completed in any street, road,
lane or alley, the commissioners may levy and assess such tax
on the property thereon fronting as aforesaid or draining
therein ; the tax to be assessed one-half on property fronting
on each side of such streets, roads, lanes or alleys, per linear
foot of said frontage, or on property draining therein ; exempt-
ing from such tax or assessment property so situated that it
cannot connect with or use the sewers for any of the purposes
for which said sewers were built." It is contended that the
legislature had no power to provide for the assessment upon
the plaintiff's property of a fixed sum based upon each linear
foot of sewer built in the street in front of his premises, with-
out any opportunity to be heard with respect to the benefits
to his property arising from the construction of the sewer, or
the justice and equity of the burden imposed. Section two
hundred and ten of the charter provides for a hearing of the
property owners in the following terms : " On the completion
by the commission of any area of assessment, and the assess-
ment thereof, the said commissioners shall designate by adver-
tisement once in the official newspapers published in said city,
a time and place where the said commissioners will meet and

hear all persons appearing before them who conceive them-
selves aggrieved in relation to said assessment, and after such
hearing the said commissioners shall make such corrections in
the assessment roll as will, in their judgment, render the said
assessment roll just and equitable." The statute, in terms
provides for a fixed sum per linear foot as the basis of the
assessment; that is to say, three dollars and forty cents upon
the property on both sides of the street through which the
sewer is to be constructed. In this case the relator's land was
situated on one side of the street, and, hence, the assessment
upon him was at the rate of one dollar and seventy cents per
linear foot. It appears that the total cost of the sewer in
front of the relator's premises was $4,087.20 and the assess-
ment imposed was $570, about fourteen per cent of the actual
cost.

It is, doubtless, true that, while the charter provides for a
hearing of the property owner before he is required to pay
the tax, the local authorities are not required or empowered
to change the basis of the assessment; that is to say, they
have no power to make it less than one dollar and seventy
cents per linear foot, and the question is whether a statute
imposing a local assessment in this manner to defray a portion
of the expense of a public sewer is a valid exercise of legisla-
tive power. The whole controversy resolves itself into an
inquiry with respect to the power of the legislature, when
enacting a city charter, to provide for imposing assessments
for local improvements to defray a portion of the cost upon
property situated upon the street, in and upon which the
improvement is made, according to the frontage or width of
the several lots or parcels of land. The power of the legisla-
lature to impose the entire cost of the improvement, whatever
it may be, whether regulating, grading or paving the street
itself, or the construction of a sewer therein, upon some rule
or principle of apportionment prescribed in the statute, I
assume cannot be doubted; and, hence, the power to impose
some portion of the cost upon the local property owners must
follow as a necessary conclusion, and unless the legislature is

restricted in the choice of methods it may adopt such rule or principle of apportionment as it determines to be just and equitable. It may select, as the basis of the rule or principle of apportionment, the assessed value of the several lots, the actual benefits to be derived from the improvement, a fixed percentage of the cost of the work, or a fixed sum per linear foot of the frontage of the parcels of property affected by the improvement. In this case it adopted the principle that one dollar and seventy cents of the actual cost of a linear foot of the sewer in front of each lot, on each side of the street, should be charged upon the abutting property according to frontage. If it had declared that the property should pay fourteen per cent of the cost of the work in front of the lot it would amount to practically the same thing, and that principle would then form the basis for ascertaining the amount of the contribution which each property owner was required to pay toward the expense of the improvement. If the same person happened to own the property on both sides of the street, of course the amount of his contribution would be double, and he would then be required to pay three dollars and forty cents per linear foot as his share or contribution to the cost. The real question involved in this appeal is whether the legislature had power to adopt this principle of apportionment as a just and equitable one, or was restricted to some other rule or principle.

The taxing power is one of the attributes or incidents of sovereignty. It is and must be inherent in every form of government, and it could be exercised even with us although the Constitution was entirely silent on the subject. Indeed, the only practical restrictions placed by the Constitution upon the exercise of the power relate to the observance of certain parliamentary forms in the enactment of bills providing for the imposition of taxes. The necessity for the exercise of the power rests wholly in the discretion of the legislature, and that discretion extends to the selection of the subjects of taxation or the things to be taxed, whether it be persons or property, business or vocations. The fiat of the legislature must be

expressed in the form of a law to be executed according to its terms, and in compliance with certain established principles designed to secure the citizen against all oppressive and arbitrary exactions. The principle that the citizen cannot be deprived of his property without due process of law is applicable to all laws for imposing taxes; but only to this extent and in this sense, that before he is required to pay the tax or assessment, or before it shall be deemed to be conclusively established against him, he shall have notice of the proceeding and an opportunity to be heard before some board or official body competent to review the proceedings or to redress any just grievance that he may have upon the facts. But the rule or principle of apportionment is a question that rests wholly with the legislature when enacting a law, and the citizen has no absolute right to a hearing upon that question any more than he is entitled to be heard upon the selection by the legislature of the subjects of taxation. In the enactment of the law he is represented, and while it may be usual and proper for a law-making body to hear arguments as to measures of taxation *pro* and *con* through committees or otherwise, such hearing cannot be demanded as a legal right.

The legislature of this state has from time immemorial enacted bills at each session providing for the imposition of the annual taxes upon the principle that each hundred dollars of property should contribute a designated fraction of a cent or mill, more or less, according to the necessities of the government as the sum which every owner of property must pay in order to defray the expenses and charges of government. Before the tax thus imposed becomes conclusive against the property owner, he is entitled to a hearing upon certain questions; that is to say, he must be permitted at some stage of the proceedings to show that he owns no property, or if he does that it is valued unequally or excessively, or that he does not reside within the district where he has been assessed, and, perhaps, other matters of fact which may go to diminish the tax, or to avoid it altogether. But he is not entitled to be heard at any stage upon the justice or propriety of the princi-

ple upon which the tax is to be apportioned; that is to say, he cannot question the justice of the power to impose the tax for one mill or a fraction of a mill, as the case may be, upon each hundred dollars of taxable property. That question was absolutely within the discretion of the legislature, and after the law is enacted it is the expression of the sovereign will and in principle very much like the decree which we are told went forth from Cæsar Augustus that the whole world should be taxed. It differs from it only in this, that it does not proceed from imperial authority wielded by a single individual, but from the representatives of the people in the legislature, to be carried into effect according to fixed laws and in compliance with established principles intended to secure the citizen from unjust or unequal exactions. But in spite of all the precautions that the wit of man has ever been able to devise, taxation cannot be made to operate equally or justly upon every individual. Whatever rule or principle is adopted for the distribution of the burden there will still be cases where one man pays more and another less than his share. No principle of apportionment can be adopted that will not in some degree be open to this objection; and, hence, a rule or basis for the distribution of the burden must, in the absence of some constitutional restriction, be a matter of legislative discretion. The principles that apply to taxation for general purposes apply also with equal force to taxation for local purposes or local improvements. In both cases the basis of the apportionment must be found in the law, and when expressed, whatever the principle may be, whether based upon benefits, the value of property, some fixed percentage of cost of the work or upon frontage measured by the width of each lot affected by the improvement, the discretion of the legislature in adopting the principle is conclusive upon the courts, the local authorities and the property owners.

Hence, the principle adopted in this case of distributing the burden according to frontage at a fixed sum for each linear foot of sewer constructed, was a valid exercise of power, not prohibited by any constitutional provision or any legal prin-

ciple applicable to taxation for local improvements. Some other principle might, indeed, operate more fairly upon some particular individual, but upon the whole the rule adopted by the legislature in the charter was, perhaps, as fair as any other that could be devised. It has one decided merit that, perhaps, any other rule would not have, and that is that every property owner is required to pay only according to the extent of his possessions, and all are on a basis of equality. It may be that the sewer was a greater benefit to one than to another, but objections of this character could be made whatever principle was adopted. The principle of distributing the cost of a local improvement, or some part of · it, upon property located upon the street where the improvement is made according to the frontage of lots, or upon the basis of a specified sum per linear foot, is within the power and discretion of the legislature, and so long as the burden is less than the actual cost of the improvement in front of the lot the property owner has no just ground to complain. (*Genet* v. *City of Brooklyn*, 99 N. Y. 296; *Conde* v. *City of Schenectady*, 164 N. Y. 258; *Stuart* v. *Palmer*, 74 N. Y. 183; *Spencer* v. *Merchant*, 100 N. Y. 585; *S. C.*, 125 U. S. 345; *French* v. *Barber Asphalt Co.*, 181 U. S. 324; *White* v. *Davidson*, Id. 371; *Tonawanda* v. *Lyon*, Id. 389; *Webster* v. *Fargo*, Id. 394, & *Tax Cases et seq. ; Carson* v. *Brockton Sewer Comm.*, 182 U. S. 398.)

The provisions of the charter did not deny to the relator the right to a judicial hearing before the assessment became conclusive upon him, and so far as that right is secured to the citizen by the Constitution or any principle of law in proceedings for imposing a tax or assessment it was not disregarded or violated by the statute in question. The relator was, by the terms of the act, entitled to a hearing and had a hearing before the local authorities upon every question to which the right applied. He had the right to show that the proceedings for the construction of the sewer were not initiated or conducted as required by the statute. He had the right to show that his property was so situated that he could not use the sewer for drainage purposes. He had the right to show that he

34

owned no property on the line of the street, or if he did that the width was erroneously estimated. He had the right to a hearing upon every question relating to the validity or amount of the assessment except the principle or rule of apportionment and that was prescribed by the legislature in the exercise, of its discretion, and he had no more right to a hearing upon that question after the statute was enacted than he had to a hearing upon the question whether his property should be assessed at all. The necessities of our modern life call for the frequent use of the taxing power for the promotion of local improvements. Sanitary science has stimulated the demand for drains and sewers as a protection against disease and the system in use half a century ago for paving and lighting the streets will not meet the wants of the present day. Hence, the problem of so distributing the burdens imposed upon property for such local improvements in such a manner as to secure justice to all and at the same time comply with the rules of law has become an important one. While the power to impose such burdens is liable to be abused, as all powers are, it has become a necessity in order to secure the health and promote the comfort of local communities, and when authorized by law and fairly exercised by the local authorities, there is no reason why courts should view the result with a jealous eye or be astute to disturb the proceedings unless some clear legal right of a property owner has been violated.

We do not think that any such question is presented by the record in this case and so the order appealed from should be affirmed, with costs.

HAIGHT, CULLEN and WERNER, JJ. (PARKER, Ch. J., and GRAY, J., in result), concur; BARTLETT, J., dissents.

Order affirmed.