(39 Misc. Rep. 291.)

### DONOVAN v. CITY OF OSWEGO et al.

(Supreme Court, Special Term, Oswego County. November, 1902.)

1. PUBLIC IMPROVEMENTS—ASSESSMENTS—FRONT-FOOT RULE.

The pavement for which an assessment was levied extended from the central business portion of a city to the vicinity of the suburbs thereof, the lots varying greatly in value by reason of difference in location and buildings and other improvements thereon, but the assessors made the assessment according to the front footage, regardless of the respective values, improvements, and location and the special benefits accruing to the several owners respectively, thereby assessing a wood yard at the same rate as a business block in the heart of the city having an assessed valuation some 24 times greater than the yard. Held, that the assessment could not be sustained.

2. SAME—CONSENT OF OWNERS.

Assessment of an owner for connecting his property with water pipes laid in the city without a compliance with the provision of the charter prohibiting the common council from laying mains or pipes without first obtaining the consent of at least one-half of the owners of the abutting property, is illegal.

Action by Dennis Donovan against the city of Oswego and others. This action is brought for the purpose of vacating two assessments,—one for $18,482.91, for the construction of an asphalt pavement; and the other for $2,310.97, for the construction of water and gas connections and lateral sewers,—and to enjoin the defendants from selling the plaintiff's property for the nonpayment of his alleged proportion thereof.

Brownell, Oot & Snow, for plaintiff.

Frank E. Hamilton, for defendants.

WRIGHT, J. The pavement for which the assessment of $18,-482.91 was made extends along East Bridge street, from East First street, in the central business portion of the city, to East Ninth street, in the vicinity of the suburbs thereof. The lots bordering said pavement varied greatly in value by reason of difference in location, depth, buildings, and other improvements thereon. Many of the lots were vacant. The board of assessors made the assessment against the several lots abutting on the street, according to front footage regardless of their respective values, improvements and location, and without considering the special benefits accruing from said pavement to the several owners respectively. It is urged by the defendants' counsel that the assessors did consider the values, improvements and location, but it is evident from the proofs that they did not. The front-footage rule, as applied to this particular

¶ 1. See Municipal Corporations, vol. 36, Cent. Dig. § 1113.

case, was erroneous, and resulted in assessments greatly dispropor-
tionate to the values of the respective lots and to the special benefits
conferred thereon by the improvement.

It appears by the testimony that the plaintiff's property was worth,
before the pavement, $1,700, and was assessed at that sum, and, after
laying the pavement it was worth and was assessed at the same
figure. The larger part of the plaintiff's assessed land is a wood yard,
located in the block between East Eighth and Ninth streets, a con-
siderable distance from the business center, and near the eastern
limits of the improved part of the city. That block has a frontage
of 200 feet, one-half of which belongs to the plaintiff. The block
in the year 1898 had an assessed valuation of $3,000. The assess-
ment in question against it is $1,179.88, one-half thereof against the
plaintiff's land. In the same year the total assessed valuation of the
property on the south side of Bridge street, between East First and
East Second streets of 200 feet, frontage, was $68,000. The assess-
ment against it for this pavement is $1,100. Thus it appears that
property at the suburbs worth $3,000 was taxed a larger sum than
property in the business center worth $68,000, the ratio against the
suburbs property being over 24 times greater than the ratio against
the business block. A like inequality exists respecting the assess-
ments of many other lots.

This enormous disproportion in the assessments was due to the
practical application of assessing under the rule adopted. Assess-
ments according to frontage is a convenient rule, and is proper re-
specting properties of substantially equal values. But in this case,
where the properties are greatly unequal, it has resulted in a cor-
respondingly great disproportion among those bearing the burden
of the expense of this pavement. In the case of People v. City of
Syracuse, 59 App. Div. 626, 69 N. Y. Supp. 1143, affirmed in the
court of appeals, 168 N. Y. 644, 61 N. E. 1133, the assessors adopted
the per foot frontage rule in making an assessment for the construc-
tion of a sewer extending through Salina street, from the business
part of the city south to the suburbs. The plaintiff's cemetery land
and a farm owned by another party were assessed on the same ratio per
front foot as the business blocks. The trial court vacated the assess-
ment, and the decision was affirmed by the appellate division and by
the court of appeals. In Re Klock, 30 App. Div. 29, 51 N. Y. Supp.
897, Judge Herrick says:

"The foot-frontage rule 'is the imposition of a tax upon special lands without
reference to benefits conferred upon such lands. As a mode of assessment, it
is purely arbitrary.' * * * Two lots with equal fronts, the one containing
double the number of square feet contained in the other, are benefited in
different degrees. This rule taxes them alike. This rule also ignores the value
of the land benefited. Two different lots, with the same width of front, may
differ greatly in value, owing to a difference in location or other causes, and
hence be benefited in different degrees."

It is argued, however, that these vacant properties may, in the
future, be improved, and thus enhanced in value. But such prob-
lematical and uncertain contingencies should not ordinarily be con-
sidered, although special instances may exist where that would be

proper,—as when a building is in process of erection. But the general rule is laid down further on by Judge Herrick, in his opinion, as follows:

"In assessing the expenses of street improvements upon the property benefited, the general rule is to consider the effect of the improvement upon the market value of the property, and to make the assessment in view of that fact without regard to the present use or the purpose of the owner in relation to future enjoyment. That principle makes it necessary that the assessors should take into consideration the value of the property, and it necessarily follows that they must take into consideration the question whether property is vacant or improved, and, if improved, the extent and value of such improvements."

In Elwood v. City of Rochester, 43 Hun, 102, Judge Smith, in his opinion respecting the proper method of making assessment for public improvements, says:

"The general rule for determining the amount of benefit is a simple one. It is to ascertain the value of the property with the improvement and without it. The excess of the value with the improvement, over the value without it, is the amount of the benefit. And in estimating the value of each lot regard should be had to the buildings and other improvements upon it."

The reason of this rule is stated by the United States supreme court in Village of Norwood v. Baker, 172 U. S. 278, 19 Sup. Ct. 190, 43 L. Ed. 443, as follows:

"The principle underlying special assessments to meet the costs of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. * * * In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation."

It therefore appears from reason and authority that the rule adopted by the board of assessors in this case was erroneous in law, besides being violative of section 250 of the charter (Laws 1895, c. 394), which requires that the expense of local improvements shall be "assessed on each piece of property apportioned as equitably as may be," and it resulted in assessments greatly disproportionate to the respective values of the lots and the special benefits conferred thereon respectively, and, owing to the adoption of said rule the amount assessed against the plaintiff's land was grossly excessive as compared with the assessment on other property, and was unfair, inequitable, and unjust. The assessment should, therefore, be vacated as to this plaintiff.

We now come to the consideration of the second assessment, laid in the year 1899, for water and gas connections and lateral sewers constructed in front of the several lots, and connecting them with the mains in said street. Three water connections and three gas connections were constructed in front of the plaintiff's vacant lot against his objection, except as to one water connection, and with that one exception, were of no use to his property, and he was assessed $75.50 therefor. The charter contained no provision authorizing the laying of said connections by the city for private property, except as contained in section 44, which reads as follows:

"The common council shall not have power and is hereby forbidden to grant permission to any person, company or corporation to lay or place in, upon or under, or incumber in any manner any of the streets, alleys or highways of the city with a railroad track, spur or branch, telegraph, telephone or electric poles, wires or other apparatus or appliances, or gas or water mains or pipes, or any other matter whatsoever, without and until the legal consent in writing, duly acknowledged, of at least one-half of the owners of abutting property shall have been first obtained and filed with the city clerk."

According to the above section the city is properly and justly restrained from the exercise of arbitrary power to compel people to equip their premises with water or gas connections, and such power can only be exercised when the owners of half of the property liable to assessments have given their written and duly acknowledged consents therefor.

No consents of the owners of the abutting property, in writing, for the construction as required by the above section, were given by the owners of the abutting property; but, notwithstanding the lack of such consents, the department of works, by resolution, requested the Warren-Scharf Pavement Company to construct the connections, which were accordingly done, at the time the pavement was laid. Obtaining the necessary consents in writing, duly acknowledged, under said section 44, was a fundamental prerequisite to the validity of a resolution ordering the construction of said water and gas connections and lateral sewers between the mains in the street and the premises abutting thereon, and the construction thereof without the same renders the resolution void. Jex v. Mayor, etc., 103 N. Y. 536, 9 N. E. 39. The Jex Case was brought to set aside an assessment for the costs of a pavement on the ground that a petition therefor had not been executed by a majority of the property owners, as required by the charter. Judge Andrews, in delivering the opinion of the court of appeals in that case, says:

"The presentation of the proper petition is the basis of the jurisdiction of the common council to incur an expense for repaving reimbursable by local assessment. The statute requiring the presentation of a petition was designed for the protection of property owners. The initiation of the improvement without a petition was not an irregularity merely, but was a fundamental error. It was a condition precedent to the right to make an assessment for the improvement, that it should have been petitioned for by the requisite number of property owners."

It therefore appears that making this assessment for the water and gas connections, without obtaining the proper consents therefor, was illegal. For the above reasons the above assessments are invalid and must be vacated as to this plaintiff. Findings and judgment may be prepared accordingly.

Judgment accordingly.