## HARRIS v. CHURCHILL et al.

(Supreme Court, Trial Term, Saratoga County.   March, 1915.)

1. MUNICIPAL CORPORATIONS ☞290—PUBLIC IMPROVEMENTS—SEWERS—STAT-
UTES.

Laws 1902, c. 506, providing for the appointment of sewer commission-
ers for a village, and empowering the commissioners, with or without pe-
tition, to extend a sewer system through any street and assess the cost,
provides two ways by which a sewer may be constructed, the one on pe-
tition by property owners, the other by act of the commissioners without
petition, and repeals a provision of the village charter requiring a peti-
tion in advance of any action for the improvement.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
763, 764; Dec. Dig. ☞290.]

2. MUNICIPAL CORPORATIONS ☞292—PUBLIC IMPROVEMENTS—CONSTRUCTION
OF SEWERS—PETITIONS—QUALIFICATION OF PETITIONERS.

Where a will showed that a lot abutting on a street was owned by tes-
tator's widow and his two sons, his administrator could not sign a peti-
tion for a sewer in the street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
768–772; Dec. Dig. ☞292.]

3. MUNICIPAL CORPORATIONS ☞292—CONSTRUCTION OF SEWERS—PETITIONS.

Where each street of a village is made a separate assessment district
for the construction of a sewer, a petition for a sewer in a street may be
considered in aid of a subsequent petition for a sewer therein, and other
named streets, in determining whether the subsequent petition has the
requisite number of signers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
768–772; Dec. Dig. ☞292.]

4. MUNICIPAL CORPORATIONS ☞292—CONSTRUCTION OF SEWERS—INSUFFI-
CIENCY OF PETITION—EFFECT.

The insufficiency of a petition for a sewer in a village street is not fatal,
where the sewer commissioners are authorized by law to proceed with-
out petition, for the Legislature may authorize local authorities to make
such improvements without any petition or consent of property owners.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
768–772; Dec. Dig. ☞292.]

5. MUNICIPAL CORPORATIONS ☞294—CONSTRUCTION OF SEWERS—PROCEED-
INGS—NOTICE.

Laws 1902, c. 506, providing for the appointment of village sewer com-
missioners with defined powers, renders inapplicable Village Law (Laws
1897, c. 414) § 264, requiring 10 days' notice of time and place of hear-
ing to persons owning land on the line of a proposed sewer before action
may be taken on a petition therefor, and notice of hearing of grievances
to assessments given in accordance with the law of 1902 is sufficient.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
776–788, 791; Dec. Dig. ☞294.]

6. CONSTITUTIONAL LAW ☞294—DUE PROCESS OF LAW—NOTICE.

The Legislature cannot dispense with all notice to persons owning land
on the line of a proposed sewer before final action on assessments, but
may prescribe the kind of notice and the mode of giving it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
776–788, 791; Dec. Dig. ☞294.]

7. MUNICIPAL CORPORATIONS ☞408—CONSTRUCTION OF SEWERS—STATUTORY
PROCEEDINGS.

Laws 1902, c. 506, providing for the appointment of village sewer com-
missioners, and conferring on them the power to order the construction

of sewers through any streets, and assess the cost thereof on the property benefited, prescribes all the steps necessary to a valid assessment, and is exclusive.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1005, 1006, 1183; Dec. Dig. ☞408.]

8. MUNICIPAL CORPORATIONS .☞469—CONSTRUCTION OF SEWERS—STATUTORY ·PROCEEDINGS.

The sewer commissioners provided for by Laws 1902, c. 506, with authority to construct sewers and assess the cost thereof in proportion to benefits, may adopt the front-foot rule for an assessment; and where the adoption of the rule does not render an assessment inequitable, the owners of the property may not complain.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1113–1117; Dec. Dig. ☞469.]

9. MUNICIPAL CORPORATIONS ☞450—ASSESSMENTS—VALIDITY.

Where each street in a village is an assessment district for the construction of a sewer therein, the grouping of streets in levying an assessment for the construction of sewers in the streets is irregular, but does not invalidate an assessment, where property owners are not injured thereby.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1073, 1074; . Dec. Dig. ☞450.]

10. MUNICIPAL CORPORATIONS ☞513—COLLECTION OF SEWER TAX—ACTION TO RESTRAIN—PARTIES.

Under Laws 1902, c. 506, providing for the appointment of village sewer commissioners, with power to construct sewers at the cost of the property benefited, and providing that actions on account of any act done or omitted by the commissioners shall be brought against them, an action to restrain the collection of a sewer tax cannot be brought against the village.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1188–1193, 1195–1206; Dec. Dig. ☞513.]

Action by John C. Harris against A. L. Churchill, as Receiver of Taxes for the Town and Village of Saratoga Springs, and the Village of Saratoga Springs, to restrain the collection of a sewer tax. Findings for defendants ordered.

Salisbury & Rowe, of Saratoga Springs, for plaintiff.
Denis J. Harrington, of Saratoga Springs, for defendants.

WHITMYER, J. This action has been brought to restrain the collection of a sewer tax, amounting to $170.10, levied against three parcels of property belonging to plaintiff, as his share of the cost of a sewer built in Granite street, in the village of Saratoga Springs, N. .Y., and to restrain the collection thereof. The assessment was made by the sewer, water, and street commissioners of said village. By Laws 1902, c. 506, said commissioners are declared to be a body corporate, and are charged, among other things, with the management and control of the sewer system of the village. In 1906 a petition was presented to the commissioners for a sewer "in and along Granite street, between Alger street and Greenfield avenue." It contains an indorsement, under date of August 7, 1906, that the same was referred to the village engineer to investigate and report, and another to the effect that action was deferred on September 4, 1906, until a full meet-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing of the board. By whom these indorsements were made does not appear. No other action was taken thereon. On October 1, 1907, or thereabouts, another petition was presented, requesting that a sewer be constructed "in and along Granite street to Alger, through Alger to Clinton, and down Clinton to Van Dam, to connect with the Van Dam street sewer." The commissioners thereupon determined to construct such a sewer, and directed their clerk to advertise for bids. This was done, but no bids were received. Nothing further was done in the matter until 1910. On May 18, 1910, the clerk was directed to readvertise. He did so, bids were received, and the contract for the work was awarded to S. W. Robbins, the lowest bidder.

After the completion of the work, the cost was assessed pursuant to the provisions of section 33 of the act creating the commissioners, and a notice of the assessment and that the commissioners would meet November 30, 1910, at 3 p. m., to hear grievances, was published for one week in a daily paper of said village. Such meeting was held, and John L. Henning, an attorney, and three property owners, appeared and protested, asking that the price per foot be reduced, if possible. Henning represented 23 properties, 9 of them on Granite street. Action was deferred to consult the village attorney. A second notice, fixing January 12, 1911, as another grievance day, was published for one week in a daily paper of said village. On this day plaintiff appeared and protested, and action was deferred. On January 21, 1911, the assessment was adopted, as it had been fixed, and was then signed and ordered placed in the hands of the receiver of taxes for collection. The assessment for all the properties was $0.972 per front foot. Plaintiff was assessed for three pieces, viz., corner Vermont and Granite streets, frontage 75 feet, $72.90; 50 feet of the lot, with a frontage of about 215 feet, situate on the westerly side of Granite street and the southerly side of Greenfield avenue, $48.60; and 50 feet of the lot, with a frontage of about 173 feet, situate on the easterly side of Granite street and the southerly side of Greenfield avenue, $48.60. According to the engineer, the sewer extended about 45 feet northerly of the southerly line of plaintiff's two northerly lots. These had already been assessed for $280 for sewer on Greenfield avenue, and plaintiff had paid same. The total assessment for all the properties was $2,539.01. The total assessment for those on Granite street was $1,513.17. All owners have paid, except plaintiff and Martin Ahearn, both assessed on Granite street— plaintiff for $170.10; Ahearn, $61.24.

Plaintiff alone complains. A number of alleged irregularities are set forth in the complaint, but are not discussed in the brief presented on behalf of plaintiff. Two jurisdictional defects are claimed: First, that the petition upon which the proceeding was instituted was not signed by a majority of the owners, representing a majority of the taxable property along the line of the sewer; and, second, that notice was not given to the property owners before the petition was acted upon, as required by section 264, chapter 414, Laws 1897, known as the Village Law.

[1] The first objection is based upon the claim that the proceeding should have been conducted in accordance with the provisions of sec-

tion 1, chapter 136, Laws 1887, by which section 71 was added to the then charter of the village, as amended by section 38, chapter 506, Laws 1902. Section 71 required a petition by a majority of the owners or occupants of premises upon any street or streets, or any section or portion of any street or streets, as shown by the last village assessment roll, in advance of any action by the board of trustees of the village. The petition here was not by a majority of the owners, representing a majority of the taxable property along the line of the sewer, so that it was insufficient, if section 71 has been preserved by section 38, chapter 506, Laws 1902. Section 38 provides:

"In addition to the powers hereby conferred, the said commission shall have all the powers conferred upon the late water commissioners of said village, and also the powers conferred upon the trustees of said village in relation to sewer and water carriers and in relation to the village brook."

But certain sections of chapter 506, Laws 1902, notably sections 5, 6, 7, and 33, make it clear that the old section 71 was repealed by the repealing clause of the later act. Section 33 prescribes the procedure in detail. This section provides that:

"The majority of the owners of real estate situate on the line of any street or portion of a street in the said village may petition the said commissioners to extend said water or sewer system, or both, through said street or portion of street. Thereupon the said commissioners shall make an accurate account of the expense of any such sewer extension, make an equitable assessment of the amount thereof upon the owners of all the lots on the line of such street or portion of street, apportioned as nearly as may be to the advantage which each shall be deemed to receive by reason thereof. Notice of the completion of such assessment, and that the said commissioners will, at a time and place named, hear grievances thereon, shall be published for one week in a daily paper of said village. At said time and place the said commissioners shall hear all persons aggrieved, and may then, or as soon thereafter as possible, increase or reduce such assessment, and may add and assess any person omitted. A certified copy of the said assessment shall be delivered to the receiver of taxes of the said village in the same manner as is provided herein for the collection of assessments on account of the expense of said water system, and the same shall be a lien upon the lands assessed, and be collected in the same manner as other taxes. The said commissioners may, at any time, with or without a petition therefor, extend the said water or sewer systems, or both, through any street or portion of street and assess the cost thereof as above provided, or pay the amount out of its funds."

The section provides two ways by which a sewer may be constructed—the one, upon a petition presented by a majority of the owners of the property along a street, and the other, by the act of the sewer, water, and street commissioners, with or without a petition. And the street, in each case, is made the assessment district. Did a majority of the owners along the street petition? The owners were not shown from the records. The assessment roll for 1907 shows 16, namely, Stephen Buckley, Catherine M. Crozier, Michael Lennan, David H. Noonan, Mary Clarey, Mary Carey, Patrick S. Farrell, Owen McCarthy estate, Patrick Fitzgerald estate, Patrick C. Crowley, Martin Ahearn, Kate Ahearn, Maggie Cowley, Josiah G. Salisbury, Ann Connery, and John C. Harris. Each one was assessed for one lot, except Patrick C. Crowley, who was assessed for two. The assessment map, made under the direction of the commissioners, shows

the same owners, with the names written in the same way substantially, except that the Catherine M. Crozier lot is shown as owned by Catherine Crozier and Frances M. A. Golding, the Michael Lennan lot by Catherine Crozier and Frances M. A. Golding, the Owen McCarthy estate lot by Daniel McCarthy, the Kate Ahearn lot by James and Kate Ahearn, the Josiah G. Salisbury lot by Joseph Salisbury, and the Ann Connery lot by Mrs. McDonald, and except that Michael Conners and John L. Henning estate appear as lot owners. It also shows that Catherine Crozier and Frances M. A. Golding own two lots, that John C. Harris owns three, the John L. Henning estate two, and the other persons named thereon one each. It appears that the John L. Henning estate property was assessed on State street in 1907, and it is probable that the Michael Conners lot, then owned by Thomas P. and Hattie M. Bonney, was assessed on Vermont street. If these owners be added to the 16 on Granite street, shown by the assessment roll for that year, the result will be 18 owners of property on that street in 1907.

[2] The 1907 petition was for a sewer "in and along Granite street to Alger, through Alger to Clinton, and down Clinton to Van Dam, to connect with the Van Dam street sewer," and was signed by Stephen Buckley, Catherine Crozier and Frances Golding, D. H. Noonan and M. Noonan, Mary Clarey, Mary J. Carey, P. S. Farrell, D. F. McCarthy, Fitzgerald Adm., and Thomas Bonney, 9 property owners, considering each property by itself. The assessment roll for 1907 showed the Owen McCarthy estate as the owner of a lot. It is likely that this is the lot for which D. F. McCarthy signed, but his right to so do does not appear. And "Fitzgerald Adm." cannot be counted as a signature, for the reason that the will of the decedent showed that that lot was owned by decedent's widow and his two sons. This leaves seven valid signatures to the 1907 petition.

[3] It is claimed that the 1906 petition may be considered in aid of this. That was for a sewer "in and along Granite street, between Alger street and Greenfield avenue." Considering that each street is made an assessment district, it seems to me that this may be done, and especially so since there is no evidence that assessments were increased by the fact that the outlet was through Clinton street, instead of Greenfield avenue. That petition was signed by Mary J. Carey, Mary J. Redwood, Patrick Fitzgerald, Alice Reagon, D. H. Noonan, James P. Fitzgerald, Catherine Crozier, and Martin Ahearn, eight in all But Mary J. Redwood and James P. Fitzgerald did not own on the street, Catherine Crozier, D. H. Noonan, and Mary J. Carey signed the 1907 petition, and Alice Reagon, along with Daniel P. Reagon, her husband, then owned the lot for which Thomas Bonney signed in 1907, and which at the time of the map belonged to Michael Conners, leaving two names, Patrick Fitzgerald and Martin Ahearn, to be added to the seven valid signatures on the 1907 petition, making 9 in all, not a majority of the owners of the property on the street.

[4] The petition being insufficient, the situation was the same as if there had been no petition. But this is not fatal because, as we have seen, the commissioners were authorized to proceed without a peti-

tion. The Legislature may and frequently does authorize local authorities to make improvements of this character without any petition or consent of property owners. Mansfield v. City of Lockport, 24 Misc. Rep. 33, 52 N. Y. Supp. 571, citing People ex rel. Holler v. Board, etc., of Albany, 2 How. Prac. (N. S.) 423; Genet v. City of Brooklyn, 99 N. Y. 296, 1 N. E. 777; Spencer v. Merchant, 100 N. Y. 858, 3 N. E. 682; Van Deventer v. Long Island City, 139 N. Y. 133, 34 N. E. 774.

[5] It is claimed, in the second place, that the proceeding was irregular and void, because notice was not given to the lot owners in accordance with section 264 of the Village Law. That section requires 10 days' notice of time and place of hearing to persons owning land on the line of a proposed sewer, before action may be taken on a petition therefor. It is plaintiff's theory that such notice was required here, under the provisions of section 340 of the Village Law (Laws 1897, c. 414). Section 340 provides that:

"A village incorporated under and subject to a special law, and each officer thereof, possesses all the powers and is subject to all the liabilities and responsibilities conferred or imposed upon a village incorporated under this chapter, or upon an officer thereof, not inconsistent with such special law."

The act under which this proceeding was conducted does not require such a notice, but it does require the commissioners to give a notice of one week in a daily paper of the village, upon the completion of an assessment, of a time and place for the hearing of grievances. This was given. In fact, it was given twice, and plaintiff appeared at the second hearing.

[6, 7] The Legislature could not dispense with all notice, but had the right to prescribe the kind of notice and the mode of giving it. Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289. And, as we have seen, the act authorizes the commissioners to proceed without a petition. The act prescribes all the steps necessary to a valid assessment and is exclusive.

[8] The assessment was $0.972 per front foot. It is claimed that the adoption of this rule was error. The commissioners were required, under the act, to make an equitable assessment upon the owners of all the lots on the line of the street, apportioned as nearly as possible to the advantage deemed by them to have been received by each owner. The adoption of the front-foot rule was not necessarily error. On the contrary, the rule has been repeatedly approved and sanctioned by the courts. O'Reilley v. City of Kingston, 114 N. Y. 439, 21 N. E. 1004; People ex rel. Scott v. Pitt, 169 N. Y. 521, 62 N. E. 662, 58 L. R. A. 372; Mansfield v. City of Lockport, 24 Misc. Rep. 25, 42, 43, 52 N. Y. Supp. 571, and cases there cited; People ex rel. Keim v. Desmond, 186 N. Y. 232, 78 N. E. 857, cited by plaintiff, is clearly distinguishable from the case here; and Donovan v. City of Oswego, 39 Misc. Rep. 291, 79 N. Y. Supp. 562, also cited by the plaintiff, was reversed at 90 App. Div. 397, 86 N. Y. Supp. 155.

[9] Plaintiff was assessed $72.90 for his lot, with frontage of 75 feet, at the corner of Vermont and Granite streets, and $48.60 for a frontage of 50 feet for each of his two lots at the two corners of Gran-

ite street and Greenfield avenue. He has never been assessed for a sewer along the first lot. He has been assessed and has paid $280 for sewer in front of the last two lots on Greenfield avenue. The westerly of these lots extends about 215 feet, and the easterly one about 173 feet, along Granite street; and, according to the engineer, the sewer extended about 45 feet northerly from their southerly lines. Under these circumstances, the assessment cannot be said to be inequitable. The assessment was for the three streets, and amounted to $2,539.01. It amounted to $1,513.17 for Granite street. As we have seen, section 33 seems to make each street an assessment district. It would seem, therefore, that the grouping of the streets was irregular. But, while this may be so, no fault has been found because of that, and there is no evidence that plaintiff has been injured by it. All lot owners have paid their assessments, except plaintiff and Martin Ahearn, both assessed on Granite street, plaintiff in all for $170.10 and Ahearn for $61.24, and plaintiff alone is complaining. Under all the circumstances, it seems to me that he is not entitled to the relief asked.

[10] In any event, the complaint must be dismissed as to the village. Section 34 of the act provides that all actions or proceedings on account of any act done or omitted by the commissioners shall be brought against them in the name of the sewer, water, and street commission of Saratoga Springs, N. Y. The assessment here was laid by the commissioners, the warrant was issued by them, and the tax, when collected, will go to them. The village has had, and will have, no part in the matter. No cause of action has been stated or proved against it.

Findings may be prepared accordingly.