## THIRD DEPARTMENT, JANUARY, 1916.

JOHN C. HARRIS, Appellant, v. THE CITY OF SARATOGA SPRINGS, Respondent.

The following is the opinion of Mr. Justice Whitmyer (see *ante*, p. 284):

WHITMYER, J.: This action has been brought to restrain the collection of a sewer tax, amounting to $170.10, levied against three parcels of property belonging to plaintiff as his share of the cost of a sewer built in Granite street in the village of Saratoga Springs, N. Y., and to restrain the collection thereof. The assessment was made by the sewer, water and

street commissioners of said village. By Laws of 1902, chapter 506, said commissioners are declared to be a body corporate, and are charged, among other things, with the management and control of the sewer system of the village. In 1906 a petition was presented to the commissioners for a sewer "in and along Granite Street between Alger Street and Greenfield Avenue." It contains an indorsement under date of August 7, 1906, that the same was referred to the village engineer to investigate and report, and another to the effect that action was deferred on September 4, 1906, until a full meeting of the board. By whom these indorsments were made does not appear. No other action was taken thereon. On October 1, 1907, or thereabouts, another petition was presented, requesting that a sewer be constructed "in and along Granite Street to Alger, through Alger to Clinton, and down Clinton to Van Dam, to connect with the Van Dam Street sewer." The commissioners thereupon determined to construct such a sewer, and directed their clerk to advertise for bids. This was done, but no bids were received. Nothing further was done in the matter until 1910. On May 18, 1910, the clerk was directed to readvertise. He did so, bids were received, and the contract for the work was awarded to S. W. Robins, the lowest bidder. After the completion of the work the cost was assessed pursuant to the provisions of section 33 of the act creating the commissioners, and a notice of the assessment and that the commissioners would meet November 30, 1910, at 3 P. M., to hear grievances was published for one week in a daily paper of said village. Such meeting was held and John L. Henning, an attorney, and three property owners appeared and protested, asking that the price per foot be reduced if possible. Henning represented twenty-three properties, nine of them on Granite street. Action was deferred to consult the village attorney. A second notice, fixing January 12, 1911, as another grievance day, was published for one week in a daily paper of said village. On this day plaintiff appeared and protested and action was deferred. On January 21, 1911, the assessment was adopted, as it had been fixed, and was then signed and ordered placed in the hands of the receiver of taxes for collection. The assessment for all the properties was $.972 per front foot. Plaintiff was assessed for three pieces, viz.: Corner Vermont and Granite streets, frontage seventy-five feet, $72.90; fifty feet of the lot, with a frontage of about two hundred and fifteen feet, situate on the westerly side of Granite street and the southerly side of Greenfield avenue, $48.60; and fifty feet of the lot, with a frontage of about one hundred and seventy-three feet, situate on the easterly side of Granite street and the southerly side of Greenfield avenue, $48.60. According to the engineer, the sewer extended about forty-five feet northerly of the southerly line of plaintiff's two northerly lots. These had already been assessed for $280 for sewer on Greenfield avenue and plaintiff had paid same. The total assessment for all the properties was $2,539.01. The total assessment for those on Granite street was $1,513.17. All owners have paid, except plaintiff and Martin Ahearn, both assessed on Granite street, plaintiff for $170.10, Ahearn $61.24. Plaintiff alone complains. A number of alleged irregularities are set forth in the complaint, but are not discussed in the brief presented on behalf of plain-

tiff. Two jurisdictional defects are claimed, *first*, that the petition upon which the proceeding was instituted was not signed by a majority of the owners, representing a majority of the taxable property along the line of the sewer, and *second*, that notice was not given to the property owners, before the petition was acted upon, as required by section 264 of chapter 414 of the Laws of 1897, known as the Village Law.\* The first objection is based upon the claim that the proceedings should have been conducted in accordance with the provisions of section 1 of chapter 136 of the Laws of 1887, by which section 71 was added to the then charter of the village,† as amended by section 38 of chapter 506 of the Laws of 1902. Section 71 required a petition by a majority of the owners or occupants of premises upon any street or streets, or any section or portion of any street or streets, as shown by the last village assessment roll, in advance of any action by the board of trustees of the village. The petition here was not by a majority of the owners, representing a majority of the taxable property along the line of the sewer, so that it was insufficient, if section 71 has been preserved by section 38 of chapter 506 of the Laws of 1902. Section 38 provides: " In addition to the powers hereby conferred the said commission shall have all the powers conferred upon the late water commissioners of said village, and also the powers conferred upon the trustees of the said village in relation to sewers and water carriers and in relation to the village brook." But certain sections of chapter 506 of the Laws of 1902, notably sections 5, 6, 7‡ and 33, make it clear that the old section 71 was repealed by the repealing clause of the later act.§ Section 33 prescribes the procedure in detail. This section provides that " The majority of the owners of real estate situate on the line of any street or portion of a street in the said village may petition the said commissioners to extend said water or sewer system, or both, through said street or portion of street. Thereupon the said commissioners shall make an accurate account of the expense of any such sewer extension, make an equitable assessment of the amount thereof upon the owners of all the lots on the line of such street or portion of street, apportioned as nearly as may be to the advantage which each shall be deemed to receive by reason thereof. Notice of the completion of such assessment, and that the said commissioners will, at a time and place named, hear grievances thereon, shall be published for one week in a daily paper of said village. At said time and place the said commissioners shall hear all persons aggrieved, and may then, or as soon thereafter as possible, increase or reduce such assessment, and may add and assess any person omitted. A certified copy of the said assessment shall be delivered to the receiver of taxes of the said village in the same manner as is provided herein for the collection of assessments on account of the expense of said water system, and the same shall be a lien upon the lands assessed, and be

---

\* Gen. Laws, chap. 21 (Laws of 1897, chap. 414), § 264; re-enacted by Consol. Laws, chap. 64 (Laws of 1909, chap. 64), § 264.— [REP.

† See Laws of 1866, chap. 220.— [REP.

‡ Amd. by Laws of 1906, chap. 603.— [REP.

§ See Laws of 1902, chap. 506, § 44.— [REP.

collected in the same manner as other taxes. The said commissioners may at any time with or without petition therefor, extend the said water or sewer system, or both, through any street or portion of street and assess the cost thereof as above provided, or pay for the same out of its funds." The section provides two ways by which a sewer may be constructed, the one upon a petition presented by a majority of the owners of the property along a street, and the other by the act of the sewer, water and street commissioners, with or without a petition. And the street in each case is made the assessment district. Did a majority of the owners along the street petition? The owners were not shown from the records. The assessment roll for 1907 shows sixteen, namely: Stephen Buckley, Catherine M. Crozier, Michael Lennan, David H. Noonan, Mary Clarey, Mary Cary, Patrick S. Farrell, Owen McCarthy Estate, Patrick Fitzgerald Estate, Patrick C. Crowley, Martin Ahearn, Kate Ahearn, Maggie Cowley, Josiah G. Salisbury, Ann Connery and John C. Harris. Each one was assessed for one lot except Patrick C. Crowley, who was assessed for two. The assessment map made under the direction of the commissioners shows the same owners, with the names written in the same way substantially, except that the Catherine M. Crozier lot is shown as owned by Catherine Crozier and Frances M. A. Golding, the Michael Lennan lot by Catherine Crozier and Frances M. A. Golding, the Owen McCarty Estate lot by Daniel McCarty, the Kate Ahearn lot by James and Kate Ahearn, the Josiah G. Salisbury lot by Joseph Salisbury and the Ann Connery lot by Mrs. McDonald, and except that Michael Conners and John L. Henning Estate appear as lot owners. It also shows that Catherine Crozier and Frances M. A. Golding own two lots, that John C. Harris owns three, the John L. Henning Estate two, and the other persons named thereon one each. It appears that the John L. Henning Estate property was assessed on State street in 1907, and it is probable that the Michael Conners lot, then owned by Thomas P. and Hattie M. Bonney, was assessed on Vermont street. If these owners be added to the sixteen on Granite street, shown by the assessment roll for that year, the result will be eighteen owners of property on that street in 1907. The 1907 petition was for a sewer "in and along Granite Street to Alger, through Alger to Clinton, and down Clinton to Van Dam, to connect with the Van Dam Street sewer," and was signed by Stephen Buckley, Katherine Crozier and Frances Golding, D. H. Noonan and M. Noonan, Mary Clarey, Mary J. Carey, P. F. Farrell, D. F. McCarty, Fitzgerald, Adm., and Thomas Bonney, nine property owners, considering each property by itself. The assessment roll for 1907 showed the Owen McCarty Estate as the owner of a lot. It is likely that this is the lot for which D. F. McCarty signed, but his right so to do does not appear. And "Fitzgerald, Adm.," cannot be counted as a signature, for the reason that the will of the decedent showed that that lot was owned by decedent's widow and his two sons. This leaves seven valid signatures to the 1907 petition. It is claimed that the 1906 petition may be considered in aid of this. That was for a sewer "in and along Granite Street between Alger Street and Greenfield Avenue." Considering that each street is made an assessment

district, it seems to me that this may be done, and especially so, since there is no evidence that assessments were increased by the fact that the outlet was through Clinton street instead of Greenfield avenue. That petition was signed by Mary J. Carey, Mary J. Redwood, Patrick Fitzgerald, Alice Reagon, D. H. Noonan, James P. Fitzgerald, Catherine Crozier and Martin Ahearn, eight in all. But Mary J. Redwood and James P. Fitzgerald did not own on the street, Catherine Crozier, D. H. Noonan and Mary J. Cary signed the 1907 petition, and Alice Reagon, along with Daniel P. Reagon, her husband, then owned the lot, for which Thomas Bonney signed in 1907, and which at the time of the map belonged to Michael Conners, leaving two names, Patrick Fitzgerald and Martin Ahearn, to be added to the seven valid signatures on the 1907 petition, making nine in all, not a majority of the owners of the property on the street. The petition being insufficient, the situation was the same as if there had been no petition. But this is not fatal because, as we have seen, the commissioners were authorized to proceed without a petition. The Legislature may and frequently does authorize local authorities to make improvements of this character without any petition or consent of property owners. (*Mansfield* v. *City of Lockport*, 24 Misc. Rep. 33, citing *People ex rel. Holler* v. *Board, etc., of City of Albany*, 2 How. Pr. [N. S.] 423; *Genet* v. *City of Brooklyn*, 99 N. Y. 296; *Spencer* v. *Merchant*, 100 id. 585; *Van Deventer* v. *Long Island City*, 139 id. 133.) It is claimed, in the second place, that the proceeding was irregular and void, because notice was not given to the lot owners in accordance with section 264 of the Village Law. That section requires a ten days' notice of a time and place of hearing to persons owning land on the line of a proposed sewer, before action may be taken on a petition therefor. It is plaintiff's theory that such notice was required here, under the provisions of section 340 of the Village Law.* Section 340 provides that "A village incorporated under and subject to a special law, and each officer thereof, possesses all the powers and is subject to all the liabilities and responsibilities conferred or imposed upon a village incorporated under this chapter, or upon an officer thereof, not inconsistent with such special law." The act under which this proceeding was conducted does not require such a notice, but it does require the commissioners to give a notice of one week in a daily paper of the village, upon the completion of an assessment, of a time and place for the hearing of grievances. This was given. In fact, it was given twice and plaintiff appeared at the second hearing. The Legislature could not dispense with all notice, but had the right to prescribe the kind of notice and the mode of giving it. (*Stuart* v. *Palmer*, 74 N. Y. 183.) And, as we have seen, the act authorizes the commissioners to proceed without a petition. The act prescribes all the steps necessary to a valid assessment and is exclusive. The assessment was ninety-seven and two-tenths cents per front foot. It is claimed that the adoption of this rule was error. The commissioners were

---

* See Gen. Laws, chap. 21 (Laws of 1897, chap. 414), § 340; re-enacted by Consol. Laws, chap. 64 (Laws of 1909, chap. 64), § 380.— [REP.

required, under the act, to make an equitable assessment upon the owners of all the lots on the line of the street apportioned as nearly as possible to the advantage deemed by them to have been received by each owner.   The adoption of the front foot rule was not necessarily error.   On the contrary, the rule has been repeatedly approved and sanctioned by the courts.   (*O'Reilley* v. *City of Kingston*, 114 N. Y. 439; *People ex rel. Scott* v. *Pitt*, 169 id. 521; *Mansfield* v. *City of Lockport*, 24 Misc. Rep. 25, 42, 43, and cases there cited.)   *People ex rel. Keim* v. *Desmond* (186 N. Y. 232), cited by plaintiff, is clearly distinguishable from the case here, and *Donovan* v. *City of Oswego* (39 Misc. Rep. 291), also cited by plaintiff, was reversed at 90 Appellate Division, 397.   Plaintiff was assessed $72.90 for his lot, with frontage of seventy-five feet, at the corner of Vermont and Granite streets, and $48.60 for a frontage of fifty feet for each of his two lots at the two corners of Granite street and Greenfield avenue.   He has never been assessed for a sewer along the first lot.   He has been assessed and has paid $280 for a sewer in front of the last two lots on Greenfield avenue.   The westerly of these lots extends about two hundred and fifteen feet and the easterly one about one hundred and seventy-three feet along Granite street.   And, according to the engineer, the sewer extended about forty-five feet northerly from their southerly lines.   Under these circumstances, the assessment cannot be said to be inequitable.   The assessment was for the three streets and amounted to $2,539.01.   It amounted to $1,513.17 for Granite street.   As we have seen, section 33 seems to make each street an assessment district.   It would seem, therefore, that the grouping of the streets was irregular.   But, while this may be so, no fault has been found because of that, and there is no evidence that plaintiff has been injured by it.   All lot owners have paid their assessments, except plaintiff and Martin Ahearn, both assessed on Granite street, plaintiff in all for $170.10 and Ahearn for $61.24, and plaintiff alone is complaining.   Under all the circumstances, it seems to me that he is not entitled to the relief asked.   In any event, the complaint must be dismissed as to the village.   Section 34 of the act provides that all actions or proceedings on account of any act done or omitted by the commissioners shall be brought against them in the name of the sewer, water and street commission of Saratoga Springs, N. Y.   The assessment here was laid by the commissioners, the warrant was issued by them and the tax, when collected, will go to them.   The village has had and will have no part in the matter.   No cause of action has been stated or proved against it.   Findings may be prepared accordingly.